J. DAVID OLSON, Plaintiff-Appellant, v. THE CITY OF WHEATON PO-
LICE PENSION BOARD *et al.*, Defendants-Appellees.

Second District   No. 2—86—0495

Opinion filed March 24, 1987.

James M. Simpson, of Elmhurst, for appellant.

Edward J. Walsh, Jr., of Huck & Walsh, Chartered, of Wheaton, for appellees.

JUSTICE NASH delivered the opinion of the court:

Plaintiff, J. David Olson, appeals from an order of the circuit court which, on administrative review, confirmed the decision of the city of Wheaton police pension board (board) that awarded plaintiff a "not-on-duty" disability pension under section 3—114.2 of the Illinois Pension Code (Code) (Ill. Rev. Stat. 1985, ch. 108½, par. 3—114.2). Plaintiff contends the board's decision to deny him a more remunerative "line-of-duty" disability pension pursuant to section 3—114.1 of the Code (Ill. Rev. Stat. 1985, ch. 108½, par. 3—114.1) was against the manifest weight of the evidence and that the board erred in its determination of the time when plaintiff's pension was to commence.

Plaintiff applied to the board for a line-of-duty disability pension, which provides a payment of 65% of an individual's salary; a not-on-duty pension pays 50% of such salary. At hearings on his application, plaintiff testified he became a police officer in 1969 and was promoted to sergeant in 1977. He stated he had suffered occasional migraine headaches since the age of 10 but did not miss any work or suffer more than one headache per year until 1982, when his headaches became more intense. They were then accompanied by blurred vision, nausea, and dehydration and, unlike the earlier headaches, lasted from three days to one week and forced plaintiff to miss work two or three times in 1982. In 1983, migraine headaches prevented him from going to work six times, and, in 1984, plaintiff suffered migraine headaches 10 or 12 times. In the 18 months prior to his application, plaintiff suffered two or three headaches per month which lasted from three to seven days. Plaintiff stated that he lost 50 to 60 days of work in the two years preceding his August 1985 application.

Plaintiff further testified that he first consulted with Dr. Richard Niedballa about the headaches in 1974. Dr. Niedballa could not find a physical cause for them and told plaintiff that the headaches could be caused by stress. In 1983, Dr. Niedballa referred plaintiff to Dr. Ronald Severino, who suggested that plaintiff stay home for two weeks. Plaintiff's headaches did not recur during that period. In

1984, Dr. Niedballa told plaintiff that his headaches were caused by stress induced by his job as a police officer and suggested that plaintiff leave his employment. Plaintiff informed Dr. Niedballa that he only had to work three more years to reach retirement and asked the doctor to continue his medication until that time. In 1985, Dr. Niedballa referred plaintiff to Dr. Angelo Miele for additional treatment and Dr. Miele also concluded that plaintiff's headaches were caused by stress in his employment. Dr. Niedballa then advised plaintiff that remaining in his job as a police officer could result in more serious problems and that plaintiff should therefore retire. Plaintiff testified that he quit work on August 1, 1985, and later experienced two additional migraine headaches which lasted for several days and confined him to bed.

Plaintiff testified Dr. Niedballa charted his headaches and determined that they usually began in the middle or end of plaintiff's work week and extended into his off-duty days. Plaintiff stated that he experienced stress in his employment because of conflicts with his superiors and that Wheaton police chief Carl Dobbs brought departmental charges against him in 1982. Plaintiff also stated he had been assigned as a patrol officer because of a "difference in management style between Chief Dobbs and myself."

The plaintiff offered into evidence certificates of disability from Drs. Niedballa, Miele, and Severino which stated that his headaches were caused by job-related stress. Reports by Dr. J. George Handley and copies of three medical publications, which stated that significant stress could cause severe migraine headaches, were also admitted into evidence.

On December 11, 1985, the board denied plaintiff a line-of-duty disability pension and awarded him a not-on-duty pension effective November 11, 1985. The circuit court confirmed the board's decision on administrative review and this appeal followed.

■ Plaintiff first contends the board's decision was against the manifest weight of the evidence. Before resolving this issue, we must first determine whether the circuit court erred in affirming the board's decision based on its interpretation of section 3—114.1 of the Illinois Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 3—114.1). Under that statute, a line-of-duty disability pension may be awarded only where a "police officer as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department." The trial court found that the aggravation of an underlying physical condition did not fall within the cover-

age of the statute and plaintiff was thus not entitled to a line-of-duty disability pension. In reaching its decision, the court relied upon *People ex rel. Cazel v. Board of Trustees* (1943), 317 Ill. App. 585, 47 N.E.2d 536, a case which addressed a similar issue but which has not since been cited by the Illinois courts. Plaintiff argues the court erred in its interpretation of the statute.

It is well established that the rules governing police and firemen's pensions must be liberally construed in favor of the applicant. (*Hahn v. Police Pension Fund* (1985), 138 Ill. App. 3d 206, 211, 485 N.E.2d 871, *appeal denied* (1986), 111 Ill. 2d 581; *Jahn v. City of Woodstock* (1981), 99 Ill. App. 3d 206, 208, 425 N.E.2d 490.) In interpreting section 3—114.1, we first note that its language does not appear to be as restrictive as the earlier form of the statute addressed in *Cazel*, which limited pensions to those police officers who became physically disabled "while in and *in consequence of the performance of [their] duty.*" (Emphasis in original.) (*People ex rel. Cazel v. Board of Trustees* (1943), 317 Ill. App. 585, 595.) We believe that section 3—114.1, which allows the award of a line-of-duty pension where an officer is disabled "as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty" (Ill. Rev. Stat. 1985, ch. 108½, par. 3—114.1), requires a broader interpretation than the statute considered in *Cazel*, and we decline to follow the *Cazel* opinion. We conclude that section 3—114.1 does not bar the award of a line-of-duty disability pension based upon the aggravation of a preexisting physical condition.

We are supported in our decision by cases in which our supreme court determined that evidence of a preexisting physical disability will not bar an award of compensation for a job-related injury caused by the "stress of his usual labor." (*Atlantic & Pacific Tea Co. v. Industrial Com.* (1977), 67 Ill. 2d 137, 141, 364 N.E.2d 83; *Illinois Valley Irrigation, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 234, 240, 362 N.E.2d 339; *Laclede Steel Co. v. Industrial Com.* (1955), 6 Ill. 2d 296, 300, 128 N.E.2d 718.) Although these cases arose under the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*), we consider that the principle applies to the facts of the present case.

■ We must next determine whether plaintiff's disability, which, under the evidence, was caused by job-related stress which aggravated his preexisting condition, was sustained as the result of an "act of duty" within the meaning of section 3—114.1 of the Illinois Pension Code. The Code defines an act of duty as:

"Any act of police duty inherently involving special risk, not

ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman by the statutes of this State or by the ordinances or police regulations of the city in which this Article is in effect or by a special assignment; or any act of heroism performed in the city having for its direct purpose the saving of the life or property of a person other than the policeman." Ill. Rev. Stat. 1985, ch. 108½, par. 5—113.

In *Johnson v. Retirement Board of the Policemen's Annuity and Benefit Fund* (1985), 137 Ill. App. 3d 546, 484 N.E.2d 1250, *aff'd* (1986), 114 Ill. 2d 518, 502 N.E.2d 718, the court considered this definition and held that a police officer is entitled to line-of-duty disability benefits whenever he is injured "while performing his duty of protecting and serving the public." (137 Ill. App. 3d 546, 549, 484 N.E.2d 1250.) In affirming, our supreme court stated that although an act of duty need not involve inherently dangerous tasks, and may involve acts similar to those found in many civilian occupations, a line-of-duty pension may be awarded only where the officer is acting in the capacity of a policeman at the time he performs the task. The court noted that there was "no comparable civilian occupation to that of a traffic patrolman responding to the call of a citizen" and held that an officer who fell in an intersection while responding to a call for assistance regarding a traffic accident was entitled to a line-of-duty disability pension. *Johnson v. Retirement Board of the Policemen's Annuity and Benefit Fund* (1986), 114 Ill. 2d 518, 522-23, 502 N.E.2d 718.

Here, plaintiff testified that his stress was caused by differences in management style with his superior, the fact that charges were brought against him, and the fact that he was assigned as a patrol officer although he had attained the rank of sergeant. We do not consider these factors demonstrate that plaintiff's stress resulted from his performance of an act of duty within the meaning of section 5—113 of the Code. It seems evident that these circumstances arising from plaintiff's employment did not involve a "special risk, not ordinarily assumed by a citizen in the ordinary walks of life." (Ill. Rev. Stat. 1985, ch. 108½, par. 5—113.) Civilians regularly suffer stress in their employment resulting from conflicts with their superiors, complaints that are filed against them in connection with their jobs, and the assignment of tasks which they deem unsuitable for their position. We cannot say that plaintiff was disabled while "he was engaged in activities related to his duty as a police officer to protect and serve the public" (*Johnson v. Retirement Board of the Policemen's Annuity and Benefit Fund* (1985), 137 Ill. App. 3d

546, 548, 484 N.E.2d 1250, *aff'd* (1986), 114 Ill. 2d 518, 502 N.E.2d 718); and find that his disability did not result from the performance of an act of duty as is required by section 5—113 of the Illinois Pension Code. As the board did not err in denying a line-of-duty pension on these grounds, we need not address plaintiff's argument that the board's decision was against the manifest weight of the evidence.

■ Plaintiff also contends that a rule established by the board, which sets the effective date of a disability pension as the latter of the date the applicant is removed from the payroll or the date the application was received by the board, violates section 3—114.1 of the Illinois Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 3—114.1), which states that a disabled officer "shall be entitled to a disability retirement pension at 65% of the salary attached to the rank on the police force *** at the date of suspension of duty or retirement." Plaintiff argues that this provision requires that his disability pension start from August 1, 1985, the date he ceased working, rather than from November 11, 1985, as fixed by the board.

This court noted in *Hahn v. Police Pension Fund* (1985), 138 Ill. App. 3d 206, 210, 485 N.E.2d 871, *appeal denied* (1986), 111 Ill. 2d 581, that the date of suspension of duty or retirement referred to in section 3—114.1 was for the purposes of determining the amount of a disability pension and the fact of disability; it does not establish the date upon which pension payments must commence. In this case, plaintiff continued to receive full pay until November 10, 1985, and his pension commenced the next day. Section 3—114.1 may not be interpreted to permit plaintiff to receive both salary and pension for the period from August 1, 1985, through November 10, 1985.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

LINDBERG, P.J., and REINHARD, J., concur.