PATRICK RYNDAK, Plaintiff-Appellant, v. RIVER GROVE POLICE PENSION BOARD, Defendant-Appellee.

First District (5th Division)   No. 1—92—2381

Opinion filed June 11, 1993.—Rehearing denied July 22, 1993.

Stanley H. Jakala, of Berwyn, for appellant.

Sklodowski, Franklin, Puchalski & Reimer, of Chicago (Richard J. Puchalski, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiff Patrick Ryndak appeals from an order of the circuit court of Cook County affirming the River Grove Police Pension Board decision which granted plaintiff a 50% disability pension, but denied him a 65% disability pension.

The relevant facts are as follows. On May, 29, 1991, plaintiff filed an application for a duty-related disability pension with the River Grove Police Pension Board (the Board or Pension Board). At the commencement of the administrative hearing to decide Ryndak's entitlement to the pension, the Pension Board allowed plaintiff to amend his disability application in order to seek a nonduty disability pension (Ill. Rev. Stat. 1991, ch. 108½, par. 3—114.2) as an alternative to his claim for a duty disability pension (Ill. Rev. Stat. 1991, ch. 108½, par. 3—114.1).

Plaintiff testified at the hearing and submitted a written statement that he has been a police officer for the village of River Grove for the past 22 years. Plaintiff stated that during that period of time, he had been shot at, beaten, seen people die in automobile accidents and had a fellow officer die right in front of him. Plaintiff believes that the negative aspects of being a police officer and his experiences over the span of time that he has been a police officer have caused him to suffer from depression, stress and headaches. In 1985, plaintiff became a patient of Dr. Demorest and was prescribed a tranquilizer. Plaintiff claims that his level of stress and depression increased in 1990 when he was named as a defendant in a civil rights lawsuit and received little or no support from the administration. Also in 1990, plaintiff was beaten by an offender and incurred bruises to his eye, nose, head and ribs and required reconstructive surgery. Plaintiff claims that he still suffers from headaches and a nervous condition as a result of the incident and is being treated with medication. Plaintiff claims that the medication makes him sleepy and affects his ability to make snap decisions regarding the use of force.

Reports were submitted by plaintiff's personal physician, Dr. Demorest, three psychiatrists chosen by plaintiff, Dr. Mohan, Dr. Reinstein, and Dr. Kaye, as well as a psychiatrist chosen by the attorney for the Board, Dr. D'Agostino. Dr. Demorest stated in his report that plaintiff suffered multiple stresses while employed in the police department. Since his injury of 1990, plaintiff has complained of almost daily headaches. Dr. Demorest diagnosed plaintiff as disabled, suffering from post-traumatic headache syndrome and from stress, anxiety and depression as a result of the circumstances of his police occupation.

Dr. Kaye also diagnosed plaintiff as disabled and found that plaintiff's headaches were a symptom of post-traumatic nervous instability. Dr. Mohan diagnosed plaintiff as suffering from a major depressive disorder with anxiety. Dr. Reinstein diagnosed plaintiff as suffering from post-traumatic stress disorder.

Dr. D'Agostino also rendered an opinion that plaintiff is mentally disabled. It was Dr. D'Agostino's opinion that plaintiff's disability was not caused by an act of police service. Rather, Dr. D'Agostino stated that although plaintiff described a multitude of traumatic events occurring during his service as a police officer, his major trauma and complaint concern the lack of support by the village during his trial in 1990. Dr. D'Agostino also issued a second report which reiterated his conclusion that plaintiff's major trauma was his perceived lack of support by the village during his trial and not his beating in 1990. Dr. D'Agostino also stated that he did not believe plaintiff's symptoms are related so much to "post concussion" as they are related to various psychological factors that have come into play over the years prior to December 1990.

Based on this evidence, the Board concluded that plaintiff was entitled to a nonduty, but not an in-the-line-of-duty, disability pension. Plaintiff filed a complaint for administrative review in the circuit court of Cook County, and the circuit court affirmed the Board's decision. For the following reasons, we affirm the decision of the circuit court.

Plaintiff sought a line-of-duty pension pursuant to section 3—114.1 of the Illinois Pension Code, which provides, in pertinent part:

"Disability Pension—Line of duty. If a police officer as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, the police officer shall be entitled to a

disability retirement pension of 65% of the salary attached to the rank of the police force held by the officer at the date of suspension of duty or retirement. A police officer shall be considered 'on duty', while on any assignment approved by the chief of the police department of the municipality he or she serves, whether the assignment is within or outside the municipality." (Ill. Rev. Stat. 1991, ch. 108½, par. 3—114.1.)

The Board found that plaintiff was indeed psychologically disabled, but that his disability resulted from a cause other than the performance of an act of duty, thereby entitling plaintiff to a disability pension of 50% of his salary. See Ill. Rev. Stat. 1991, ch. 108½, par. 3—114.2.

When reviewing a pension board's decision, the court will not reweigh the evidence, but instead will determine whether the Board's decision is against the manifest weight of the evidence. (*English v. Village of Northfield* (1988), 172 Ill. App. 3d 344, 526 N.E.2d 588.) Our review of the record in the instant case leads us to conclude that the Board's decision was not against the manifest weight of the evidence.

█ In order to succeed in a claim for a line-of-duty disability pension, plaintiff must establish a causal connection between plaintiff's condition and an act of police service. In *Olson v. City of Wheaton Police Pension Board* (1987), 153 Ill. App. 3d 595, 505 N.E.2d 1387, the plaintiff police officer sought a duty-related pension on the basis that he suffered from severe migraine headaches which he claimed were caused by job-related stress. The court denied plaintiff's pension request on the basis that "differences in management style with his superior, the fact that charges were brought against him, and the fact that he was assigned as a patrol officer although he had attained the rank of sergeant" do not demonstrate that plaintiff's stress resulted from his performance of an act of duty. (153 Ill. App. 3d at 599.) The court noted that these circumstances are not unique to plaintiff's duties as a police officer, but rather, are similar to those suffered by any citizen in any job.

A similar result was reached in *Wall v. Police Pension Board* (1988), 178 Ill. App. 3d 438, 533 N.E.2d 458, wherein the plaintiff claimed that he suffered from duty-related stress reactions. The court found that plaintiff's complaints that he could no longer deal with the public's negative response to him and was frustrated because he was not advancing in his career were common to any type of employment. Therefore, the court concluded that plaintiff failed to show a causal connection between his particular, unique duties as a police officer

and his stress. See also *Batka v. Board of Trustees* (1989), 186 Ill. App. 3d 715, 542 N.E.2d 835 (no causal connection between plaintiff's duties as a police officer and his stress.)

The record here likewise fails to establish a causal connection between plaintiff's stress and headaches and his unique duties as a police officer. The four psychiatrists who rendered an opinion as to plaintiff's mental state all found plaintiff to be psychologically disabled. Although Dr. Demorest, a family physician, found that plaintiff's psychological disability was caused by specific acts of his police service, the only psychiatrist to discuss a causal connection between plaintiff's employment and his psychological disability was Dr. D'Agostino, who specifically stated that plaintiff's disability was not caused by an act of police service. Furthermore, we find that plaintiff's complaints of stress caused by being named as a defendant in a lawsuit and receiving little support from superiors and seeing a co-worker die of a heart attack are not circumstances unique to police officers. Moreover, the stress and depression plaintiff claims he suffers as a result of the violent nature of police duties are problems related to the general nature of being a police officer and not to a specific act of police service.

We also note that although Dr. Demorest stated that plaintiff suffered from a post-traumatic headache syndrome as a result of the injuries he incurred on duty in 1990, Dr. D'Agostino found that plaintiff's symptoms are related not so much to "post concussion" as they are to various psychological factors that have come into play over the years prior to 1990. The Board resolved this conflicting evidence as to plaintiff's alleged physical disability against plaintiff, and it is not our position to reweigh this evidence or to substitute our opinion for that of the Board.

We therefore conclude that the Board's decision that plaintiff did not suffer an in-the-line-of-duty disability was not against the manifest weight of the evidence and thus affirm the decision of the circuit court.

Affirmed.

MURRAY and COUSINS, JJ., concur.