ROBIN TRETTENERO, Plaintiff-Appellant, v. POLICE PENSION FUND OF THE CITY OF AURORA *et al.*, Defendants-Appellees.

Second District No. 2—93—1311

Opinion filed November 30, 1994.

Carolyn McGuire, of Thomas F. McGuire & Associates, Ltd., of Long Grove, for appellant.

Charles H. Atwell, Jr., of Atwell & Atwell, of Aurora, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Robin Trettenero, appeals an order affirming the decision of the Board of Trustees of the Police Pension Fund of Aurora denying her a line-of-duty disability pension and granting her a nonduty disability pension. We affirm in part and reverse in part.

Plaintiff makes two contentions on appeal. She first argues the trial court's decision to grant a motion to dismiss as defendants the individual trustees of the board of trustees of the police pension fund of Aurora (the Board) was erroneous. Second, she argues the Board's decision to deny her a line-of-duty pension and instead award her a nonduty pension was against the manifest weight of the evidence. Although we find erroneous the trial court's decision to dismiss as defendants the individual members of the Board, we affirm the Board's decision to award plaintiff a nonduty pension and to deny her a line-of-duty pension.

The following brief summary of the facts is taken from the record. Plaintiff joined the Aurora police department in 1985. She served without incident until 1989 when, by her account, she observed instances of abusive behavior by police officers toward prisoners in lockup. She reported these alleged abuses to a superior but no action was taken. In April 1990, she witnessed a violent assault by an officer on a prisoner in his cell. Plaintiff was disciplined for failing to make a written report of this incident to the chief of police and the news media depicted her as a "passive participant" in the beating. Following the incident, the prisoner sued the plaintiff, the other officer involved, and the City of Aurora. The other officer was ultimately convicted of battery and discharged from the police force. In the months following the beating, plaintiff increasingly experienced stress, depression, and anxiety which caused her job performance to suffer. In December 1991, she filed an application to the Board seeking a line-of-duty pension or, in the alternative, a nonduty pension. After a hearing, her application was granted as to the non-

duty pension and denied as to the line-of-duty pension. Plaintiff filed a complaint for administrative review, and the circuit court affirmed the Board's decision. This appeal ensued.

■ Plaintiff's first contention is that section 3—107(a) of the Administrative Review Law (735 ILCS 5/3—107(a) (West 1992)) clearly mandates that her complaint for administrative review name as defendants each member of the Board. At the time her complaint was filed and ruled upon, section 3—107(a) read as follows:

> "Except as provided in subsection (b) [not applicable here], in any action to review any final decision of an administrative agency, the administrative agency and all persons, other than the plaintiff, who were parties of record to the proceedings before the administrative agency shall be made defendants." 735 ILCS 5/3—107(a) (West 1992).

Plaintiff maintains that, based on the clear language of this section, she was required to name as defendants each of the Board's individual trustees because they were parties of record in the administrative proceeding. Defendant does not dispute that the trustees were parties to the administrative proceeding. Instead, it argues that under the Illinois Pension Code (40 ILCS 5/3—101 *et seq.* (West 1992)), the decision appealed from was an action of the Board, which is a distinct statutory entity, and not that of its individual members. Accordingly, defendant argues the Board should be the only named defendant.

In *Lockett v. Chicago Police Board* (1990), 133 Ill. 2d 349, our supreme court considered and rejected a similar argument. In *Lockett*, the Chicago police board, acting on a charge filed by the police superintendent, discharged a police officer for disciplinary violations. The officer filed a complaint for administrative review naming the police board and each of its individual members as defendants. He did not name the superintendent as a defendant. (*Lockett*, 133 Ill. 2d at 351.) The police board filed a motion to dismiss based on the officer's failure to name the superintendent, who, along with each of the police board members, was a party to the administrative proceeding. The appellate court in *Lockett* held that since the decision being reviewed was that of the police board and not that of the superintendent, and their interests in the matter were identical, there was no need to name the superintendent as a defendant. *Lockett*, 133 Ill. 2d at 353.

The supreme court disagreed, holding that the clear, unambiguous language of the statute requires all parties of record in the administrative proceeding to be named as defendants. (*Lockett*, 133 Ill. 2d at 354.) The court quoted the applicable statutory language:

"the administrative agency and all persons, other than the plaintiff, who were parties of record to the proceedings before the administrative agency shall be made defendants." (735 ILCS 5/3—107(a) (West 1992); *Lockett*, 133 Ill. 2d at 354.) This requirement "is mandatory and specific, and admits of no modification." *Lockett*, 133 Ill. 2d at 354.

There is no question that the individual trustees of the Board were parties of record in the administrative proceedings in the present case. The report of proceedings from the Board's hearing on plaintiff's pension application lists each trustee as a party of record, and each trustee signed the written decision adjudicating plaintiff's pension claim. Applying the plain meaning of section 3—107(a), we find that the trial court's decision to dismiss the individual trustees is in conflict with the statute as interpreted in *Lockett* and must be reversed.

■ Plaintiff's second contention is that the Board's decision to grant her a nonduty instead of a line-of-duty pension is against the manifest weight of the evidence. Article 3, section 3—114.1, of the Illinois Pension Code, which applies to municipalities having 500,000 or fewer inhabitants, states the requirements for a line-of-duty pension:

"Disability pension—Line of duty. If a police officer as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, the police officer shall be entitled to a disability retirement pension of 65% of the salary attached to the rank on the police force held by the officer at the date of suspension of duty or retirement. A police officer shall be considered 'on duty', while on any assignment approved by the chief of the police department of the municipality he or she serves, whether the assignment is within or outside the municipality." (40 ILCS 5/3—114.1 (West 1992).)

Section 3—114.2 states the requirements for a nonduty disability pension:

"Disability pension—Not on duty. A police officer who becomes disabled as a result of any cause other than the performance of an act of duty, and who is found to be physically or mentally disabled so as to render necessary his or her suspension or retirement from police service in the police department, shall be entitled to a disability pension of 50% of the salary attached to the officer's rank on the police force at the date of suspension of duty or retirement." 40 ILCS 5/3—114.2 (West 1992).

The Board concluded (1) that plaintiff suffered from a temporary disability; and (2) that the disability was the result of her feelings of alienation and her perception of unfair treatment by the police department, fellow officers, and the news media following the April 1990 police brutality incident. The Board found that this perception of unfair treatment, and not any specific act of duty, was the true cause of plaintiff's disability. Based on these conclusions, the Board awarded plaintiff a nonduty pension.

■ Upon administrative review, the function of both the trial and appellate courts is limited to determining whether the findings and conclusions of the administrative agency are against the manifest weight of the evidence. (*Iwanski v. Streamwood Police Pension Board* (1992), 232 Ill. App. 3d 180, 184.) In order to make such a finding, a court must conclude that all reasonable and unbiased persons, acting within the limits prescribed by law and drawing all inferences in support of the finding, would agree that the finding is erroneous and that the opposite conclusion is clearly evident. (*Daily v. Board of Trustees of the Police Pension Fund* (1993), 251 Ill. App. 3d 119, 122; *Batka v. Board of Trustees of the Village of Orland Park Police Pension Board* (1989), 186 Ill. App. 3d 715, 722.) When analyzing claims arising from an administrative agency's determinations, the agency's findings and conclusions on questions of fact are held to be *prima facie* true and correct. (*Iwanski*, 232 Ill. App. 3d at 184.) Because the weight of the evidence and the credibility of the witnesses are uniquely within the province of the administrative agency, there need only be some competent evidence in the record to support its findings. (*Hahn v. Police Pension Fund* (1985), 138 Ill. App. 3d 206, 209; *Iwanski*, 232 Ill. App. 3d at 184.) Courts, however, are not bound to accord the same measure of deference to an administrative agency's conclusions of law as is given to its findings of fact. *Worth v. Board of Trustees of the Pension Fund* (1992), 230 Ill. App. 3d 349, 353.

■ In examining claims of duty-related stress like the one made in the instant case, courts have required that plaintiff-police officers demonstrate their disabilities are the result of a specific, identifiable act of duty unique to police work. (*Ryndak v. River Grove Police Pension Board* (1993), 248 Ill. App. 3d 486, 490; *Wall v. Police Pension Board* (1988), 178 Ill. App. 3d 438, 444; *Olson v. City of Wheaton Police Pension Board* (1987), 153 Ill. App. 3d 595 (cited with approval in *Ryndak* and *Wall*).) Conversely, where the disability is traceable only to the "general nature of being a police officer" and not to a specific act of police service, line-of-duty disability pensions are denied. (See *Ryndak*, 248 Ill. App. 3d at 490.) Similarly, where the causes of the

stress are not unique to police work, line-of-duty disability pensions are also denied. (See *Wall*, 178 Ill. App. 3d at 444; *Ryndak*, 248 Ill. App. 3d at 490.) These general rules are an outgrowth of judicial attempts to define and apply the term "act of duty" to cases involving claimed psychological disabilities.

The term "act of duty" as used in the Code is more easily suited to cases involving physical disabilities resulting from on-the-job injuries. However, in cases where the disability is not so apparent, as with a psychological disability, courts have struggled to find a workable definition of the term. In *Olson*, the court turned to the definition of "act of duty" set forth in article 5 of the Pension Code as an aid in construction of that term in article 3. (*Olson*, 153 Ill. App. 3d at 598-99; 40 ILCS 5/5—113 (West 1992).) Section 5—113 defines "[a]ct of duty" as:

> "Any act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman by the statutes of this State or by the ordinances or police regulations of the city in which this Article is in effect or by a special assignment; or any act of heroism performed in the city having for its direct purpose the saving of the life or property of a person other than the policeman." 40 ILCS 5/5—113 (West 1992).

Article 5 applies only to municipalities having populations in excess of 500,000, whereas article 3 applies to municipalities having a population of 500,000 or less. In *Worth v. Board of Trustees of the Police Pension Fund* (1992), 230 Ill. App. 3d 349, the court criticized *Olson* for using an article 5 definition in a case arising under article 3 of the Code. In *Worth*, the claimed disability was based on a physical injury and the court was able to apply easily the plain meaning of the term "act of duty." The *Worth* court did not offer any alternative definition applicable to cases where the claimed disability is psychological. (See *Worth*, 230 Ill. App. 3d at 355.) Further, in criticizing *Olson* for looking to the article 5 definition, *Worth* did not suggest any reason why the legislature would have intended "act of duty" to have a substantially different meaning depending on whether the municipality in question has a population of more or less than 500,000. Our reading of *Olson* indicates that the court there did not mistakenly believe that it was an article 5 case. Nor did *Olson* simply graft the article 5 definition of an act of duty into article 3. Rather, *Olson* recognized, although it did not specifically state, that the definition of "act of duty" found in article 5 is useful as a guide to the meaning of the same term in article 3.

As a general rule, statutes which relate to the same thing, subject,

or object are deemed to be *in pari materia* and should be construed together. (*People ex rel. Daley v. Datacom Systems Corp.* (1991), 146 Ill. 2d 1, 17-18.) Courts presume that statutes which relate to one subject are intended by the legislature to be consistent and harmonious with each other. (*Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund* (1993), 155 Ill. 2d 103, 111-12.) Further, the same words used in different sections of a statute should be given a consistent meaning unless legislative intent to the contrary is clearly evident. *Clardy v. Rapistan Division of Lear Siegler, Inc.* (1993), 254 Ill. App. 3d 1066, 1070.

Both article 3 and article 5 of the Illinois Pension Code use the term "act of duty" in their definitions of line-of-duty and nonduty pensions. However, only article 5 adds a separate definition for the term "act of duty." In view of the above principles of statutory construction, the *Olson* court properly looked to the definition of "act of duty" in article 5 to aid its interpretation of the same term in article 3. In fact, article 3 seems to allow some flexibility in the definition of its terms. Section 3—102 states that "[t]he terms used in this Article have the meanings ascribed to them in Sections 3—103 through 3—108.1, *except when the context otherwise requires.*" (Emphasis added.) 40 ILCS 5/3—102 (West 1992).

Our view is supported by the fact that numerous other courts have cited with approval *Olson*'s definition of "act of duty." (See, *e.g.*, *Ryndak v. River Grove Police Pension Board* (1993), 248 Ill. App. 3d 486, 489; *Batka v. Board of Trustees of the Village of Orland Park Police Pension Fund* (1989), 186 Ill. App. 3d 715, 724; *Wall v. Police Pension Board* (1988), 178 Ill. App. 3d 438, 444.) Each of these cases involved claims of psychological disability, in which the more detailed definition provided in article 5 was a helpful supplement to the plain meaning of the term as used in article 3. We find that definition useful to the resolution of this case and follow the courts which have relied on it.

We now turn to the facts of the instant case in order to determine whether the Board's decision to deny plaintiff a line-of-duty pension was against the manifest weight of the evidence. In the course of evaluating plaintiff's pension application, the Board had seven psychologists and psychiatrists, six of whom were selected by the Board, conduct examinations of plaintiff. These professionals diagnosed plaintiff's disability as being, variously, post-traumatic stress disorder, post-traumatic anxiety disorder, and adjustment disorder with mixed emotional features. The symptoms described by the examiners were generally consistent, and none of them expressed doubt that plaintiff suffered from a genuine psychological disability.

In addition to its own experts, the Board considered the opinion of plaintiff's psychiatrist, Dr. Richard Hatcher. Dr. Hatcher diagnosed plaintiff as suffering from, among other things, post-traumatic stress disorder with panic-like symptoms. His report stated "Robin reported a gradual increase in work-related stresses for the past 2-3 years, beginning with an incident in which she was struck in the head from behind when chasing a suspect through a parking lot."

According to Dr. Hatcher, plaintiff was feeling progressively ostracized from the department beginning in 1989. Early in 1990, plaintiff became concerned by the abusive treatment of prisoners by officers in the police lockup. She reported her fears about the conduct of a particular officer to one of her superiors, but no action was taken. Shortly thereafter, the officer whom plaintiff had reported was promoted, and she began to feel her report was a blemish on her record and that she had broken the police "code of loyalty." In April 1990 plaintiff witnessed another assault on a prisoner by a different officer. Her reaction to this incident was to "freeze," and she was unable immediately to come to the prisoner's aid. Following this incident, the prisoner sued the officer involved, plaintiff, and the City of Aurora. This lawsuit caused plaintiff great stress and anxiety because she felt the police department did not want to find out the truth about the incident and did not properly support her. She reported feeling as though she was being made a scapegoat by the department.

Dr. Marie-Claude Rigaud concluded that plaintiff suffered "post-traumatic stress response." She also reported that "there isn't a single identifiable traumatic event, but rather a string of happenings which generated intense emotional arousal and significant self-doubt." Dr. Rigaud further noted "some conflicts identified as psychosocial stressors did involve interpersonal relationships with co-workers/supervisors."

Plaintiff was also examined by psychologist Charlotte Dillon. Dr. Dillon described an incident which occurred in January 1991 when plaintiff faced a suspect armed with a gun. Upon being confronted by this individual, plaintiff "froze" and was unable to react. Dr. Dillon identified the cause of this freezing incident as a series of occurrences which began with the April 1990 police beating. As a witness to this incident of police brutality, plaintiff "perceived that she was treated unfairly, not supported by her union ***, and virtually alone in her determination to be truthful about her perceptions of what had occurred." Dr. Dillon, however, identified the disabling event as being the 1991 gun incident, stating "[i]f the gun incident had not occurred, it is unlikely that Ms. Trettenero would have developed Post

traumatic stress syndrome." Dr. Dillon concluded the post-traumatic stress syndrome exhibited by plaintiff was the result of her police duties.

Clinical psychologist Gary Dec found that plaintiff "experienced significantly increased and consistent symptoms of depression and anxiety following an incident in Booking [sic] in April, 1990, in which a fellow officer allegedly violently abused a prisoner."

Dr. Syed Ali, a psychiatrist, diagnosed plaintiff as suffering from post-traumatic stress disorder with panic-like symptoms. He found this disorder was "specifically related to work related traumatic events which began in April of 1990." Dr. Ali further stated "[i]t is rather important to stress that client's symptoms started soon after her incident/incidences [sic] of April 1990 *** [s]he felt that she was the object of other fellow workers [sic] hostility. *** Thus she does qualify for being considered to be disabled, due to work related injury (psychological)."

Finally, the Board considered the report and testimony of Dr. Anthony D'Agostino, a psychiatrist. Dr. D'Agostino diagnosed plaintiff as suffering from adjustment disorder with mixed emotional features. His report stated that plaintiff's problems were the end result of a series of events which began about a year after the April 1990 incident, and that the major problem was her perceived lack of support from the police department. Her trauma, according to Dr. D'Agostino, stemmed from plaintiff's feelings of rejection by her peers, negative treatment by her supervisors, and the stress created by the lawsuit. Dr. D'Agostino's report concluded that "the difficulty is caused not so much by day to day police duties as much as by this officer's perception of how fairly or unfairly she is treated by peers and superiors coupled by [sic] the stress of being sued." Dr. D'Agostino's testimony before the Board was consistent with the findings in his report. He testified that the stress plaintiff felt was not the result of the specific duties of a police officer and that it was instead due to plaintiff's perception of unfair treatment by superiors, peers, and the media.

On appeal, plaintiff maintains that the cause of her disability is a specific act of duty, i.e., the beating which she witnessed of a prisoner by a fellow Aurora police officer. Plaintiff traces her disabling anxiety, depression, and stress to this incident. By contrast, the Board found that plaintiff's disability was due to an extended process by which she became progressively ostracized and alienated from the Aurora police department. The Board found that plaintiff's feelings of alienation from the department, and not the beating incident itself, was the cause of her disability. According to the Board, these

feelings of alienation from superiors and peers in the workplace are neither unique to police work nor the result of any specific act of duty as a police officer. Our thorough review of the record reveals that while the Board's conclusion is not the only one that may be drawn from the record, it is a reasonable conclusion adequately supported by the evidence.

The recent case of *Ryndak v. River Grove Police Pension Board* (1993), 248 Ill. App. 3d 486, is instructive. There, the plaintiff, Patrick Ryndak, was a 22-year police veteran. In the course of his service, he had been shot at, beaten, seen a fellow officer die, and seen people die in automobile accidents. Over time, the stress of police work began to cause him to suffer depression and headaches. His level of stress and depression increased when he was named as a defendant in a civil rights lawsuit. Ryndak believed he received inadequate support in the lawsuit from the department, which contributed to his stress. (*Ryndak*, 248 Ill. App. 3d at 487.) Also, around the same time, Ryndak was beaten by a suspect and received extensive injuries which required reconstructive surgery.

The doctors who examined Ryndak concluded that he suffered from the psychological disability of post-traumatic stress disorder, but that it was not caused by an act of police duty. Dr. D'Agostino, who also testified in *Ryndak*, stated that although Ryndak had experienced a number of traumatic events as a police officer, including the beating, his major trauma was the lack of support he received from the police department in the lawsuit, and not the beating he suffered. Based on this evidence, the Pension Board found that Ryndak failed to show a causal connection between his condition and a specific act of duty. They awarded Ryndak a nonduty pension and denied him a line-of-duty pension. *Ryndak*, 248 Ill. App. 3d at 488.

The appellate court affirmed and held the Pension Board's finding was supported by the evidence. The court concluded "the stress and depression plaintiff claims he suffers as a result of the violent nature of police duties are problems related to the general nature of being a police officer and not to a specific act of police service." *Ryndak*, 248 Ill. App. 3d at 490.

A similar result was reached in *Wall v. Police Pension Board* (1988), 178 Ill. App. 3d 438, where the plaintiff also claimed he suffered from a duty-related stress disability. The court found the plaintiff's complaints that he was fed up with the public's negative response to him and with his lack of career advancement were common to any type of employment and not causally related to any particular act of duty as a police officer. The court affirmed the

Pension Board's denial of his claim for a line-of-duty pension and held he was entitled only to a nonduty pension. *Wall*, 178 Ill. App. 3d at 444-45; see also *Batka v. Board of Trustees of the Village of Orland Park Police Pension Fund* (1989), 186 Ill. App. 3d 715 (following *Wall*).

In the present case, there was sufficient evidence before the Board which, if believed, would allow it to conclude that plaintiff's disability did not result from the performance of an act of duty. Dr. D'Agostino testified that plaintiff's disability was caused by her perception of unfair treatment by the department and not by police work *per se*. The key trauma, according to Dr. D'Agostino, was not the witnessing of the beating, but the perceived failure of support which followed. Similarly, Dr. Rigaud's report stated "there isn't a single identifiable traumatic event, but rather a string of happenings which generated intense emotional arousal and significant self-doubt." Although plaintiff traced her problems to the April 1990 incident, she admitted that the basic reason for her depression and anxiety was "[m]y relationship with the police department." *Ryndak*, *Batka*, and *Wall* demonstrate that where a psychological disability is the result of a lack of support from the police department, conflicts with co-workers, a negative public image, or the general nature of police duty, denial of a line-of-duty pension is appropriate. Based on our review of the record, we conclude that the Board's decision awarding plaintiff a nonduty disability pension and denying her a line-of-duty disability pension is not against the manifest weight of the evidence.

For the reasons stated, the judgment of the circuit court of Kane County is reversed as to the dismissal of the individual members of the Board and affirmed as to the award of a nonduty pension to plaintiff.

Reversed in part; affirmed in part.

GEIGER and DOYLE, JJ., concur.