(No. 82028.—

DONNIE ROBBINS, Appellee, v. THE BOARD OF TRUSTEES OF THE CARBONDALE POLICE PENSION FUND OF THE CITY OF CARBONDALE, ILLINOIS, Appellant.

*Opinion filed October 17, 1997.*

HARRISON, J., dissenting.

Wolff & Jones, of Murphysboro, for appellant.

Womick & Associates, Chrtd., of Carbondale, for appellee.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

Donnie Robbins petitioned the Carbondale Police Pension Fund for a disability pension pursuant to article III of the Illinois Pension Code. 40 ILCS 5/3—101 *et seq.* (West 1992). The fund's board of trustees (Board) denied Robbins a line-of-duty disability pension, but granted him a nonduty disability pension.

On administrative review, the circuit court of Jackson County confirmed the Board's decision. However, the appellate court reversed and entered judgment in favor of Robbins for a line-of-duty disability pension. 283 Ill. App. 3d 823. We allowed the Board's petition for leave to appeal (155 Ill. 2d R. 315(a)) and now reverse the appellate court.

## BACKGROUND

The appellate court detailed the evidence in this case. 283 Ill. App. 3d at 824-26. Therefore, we will repeat only those facts necessary for our disposition of this appeal. Briefly, in 1970, Robbins began working for the Carbondale police department. From 1970 to 1979, he worked as a patrol officer. From 1979 to 1988, he worked as an evidence custodian. In 1988, at age 42, Robbins was reassigned to patrol duty.

After his reassignment to patrol duty, Robbins' performance caused him stress. The several stressful aspects of Robbins' job generally stemmed from: (1) his supervisor's criticism of the timeliness and quality of his reports, and (2) his anxiety that his fellow patrol officers were younger and better trained. The record also contains evidence that, on January 1, 1990, Robbins was particularly stressed while responding to a domestic violence call. During that incident, Robbins witnessed a man commit suicide by shooting himself in the face with a shotgun.

Robbins continued working patrol duty until April

1992, when he injured his hand. In October 1992, he returned to patrol duty. Two weeks later, the Carbondale chief of police put Robbins on administrative leave pending a psychological examination. Dr. Eric Ostrov opined that Robbins was not mentally fit for duty. At the end of November 1992, the police chief suspended Robbins from duty.

In December 1992, Robbins petitioned the Carbondale Police Pension Fund for a nonduty disability pension, which amounted to 50% of the salary attached to his rank on the force on the date of his suspension. See 40 ILCS 5/3—114.2 (West 1992). In January 1994, Robbins amended his petition to add a claim for a line-of-duty disability pension, which amounted to 65% of the salary attached to his rank on the date of his suspension. See 40 ILCS 5/3—114.1 (West 1992).

In March 1994, Robbins testified before the Board and submitted three psychological evaluations. The Board subsequently received the evidence deposition of Dr. Ostrov. On September 22, 1994, the Board denied Robbins a line-of-duty disability pension, but granted him a nonduty disability pension.

Robbins filed a complaint in the circuit court of Jackson County seeking administrative review of the Board's denial of a line-of-duty pension. The circuit court confirmed the Board's decision. However, the appellate court reversed the circuit court and the Board. The appellate court entered judgment in favor of Robbins for a line-of-duty disability pension. The Board appeals.

## DISCUSSION

We explain at the outset our standard of review. Article III of the Pension Code provides that judicial review of the Board's decisions be in accordance with the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1994)). 40 ILCS 5/3—148 (West 1994). The Administrative Review Law provides that our review

extends to all questions of law and fact presented by the entire record. The statute limits our review to the record before us; we may not hear new or additional evidence. The statute also mandates that the "findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3—110 (West 1994).

On administrative review, a court's function is to ascertain whether the findings and decision of the agency are against the manifest weight of the evidence. An administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings. If the record contains evidence that supports the agency's decision, it should be upheld. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992).

In this case, the appellate court stated that it was not deciding whether the Board's decision was against the manifest weight of the evidence, but rather, whether the Board and the circuit court properly applied the law to the facts. 283 Ill. App. 3d at 827. The rule that an administrative agency's findings of fact should not be disturbed unless they are against the manifest weight of the evidence does not apply where the question involved is one of law, such as the proper interpretation of a statute. Rather, in such a case, the Board's finding is not binding on the court. *Envirite Corp. v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210, 214 (1994); *DiFoggio v. Retirement Board of the County Employees Annuity & Benefit Fund*, 156 Ill. 2d 377, 380-81 (1993).

Section 3—114.1 of the Pension Code provides for a line-of-duty disability pension as follows:

"Disability pension—Line of Duty. If a police officer as the result of sickness, accident or injury incurred in or

resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, the police officer shall be entitled to a disability retirement pension of 65% of the salary attached to the rank on the police force held by the officer at the date of suspension of duty or retirement. A police officer shall be considered 'on duty', while on any assignment approved by the chief of the police department of the municipality he or she serves, whether the assignment is within or outside the municipality." 40 ILCS 5/3—114.1 (West 1994).

In contrast, Pension Code section 3—114.2 provides for a nonduty pension. Under this section, a nonduty pension shall be granted to "a police officer who becomes disabled as a result of any cause other than the performance of an act of duty, and who is found to be physically or mentally disabled so as to render necessary his or her suspension or retirement from police service in the police department." A nonduty disability pension amounts to "50% of the salary attached to the officer's rank on the police force at the date of suspension of duty or retirement." 40 ILCS 5/3—114.2 (West 1994).

The controlling principles are familiar:

"The primary rule of statutory interpretation is that a court should ascertain and give effect to the intention of the legislature. The legislative intent should be sought primarily from the language used in the statute. [Citation.] The statute should be evaluated as a whole; each provision should be construed in connection with every other section. [Citation.] 'Where the language of the act is certain and unambiguous the only legitimate function of the courts is to enforce the law as enacted by the legislature.' [Citation.]" *Abrahamson*, 153 Ill. 2d at 91.

### "An Act of Duty"

Pension Code section 3—114.1 requires, *inter alia*, that the officer's disability result from "an act of duty." 40 ILCS 5/3—114.1 (West 1994). That phrase is not

defined in that section or anywhere in article III of the Pension Code. However, that phrase is defined in article V of the Code. 40 ILCS 5/5—113 (West 1994). Article III of the Code pertains to police pension funds in municipalities with populations under 500,000, while article V pertains to the same subject in municipalities with populations exceeding 500,000. Compare 40 ILCS 5/3—101 *et seq.* (West 1994) with 40 ILCS 5/5—101 *et seq.* (West 1994).

We may look to article V of the Pension Code for a definition of language used in article III of the Code. We emphasize that:

> "the intent of the legislature in enacting a statute must be determined by examining the *entire* statute and by construing each material part of the legislation together. [Citation.] A court should consider each part or section of a legislative act in connection with every other part or section, and not each part alone, in determining the purpose or intent of the legislature." (Emphasis in original.) *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 318 (1989).

Accord *Huckaba v. Cox*, 14 Ill. 2d 126, 131 (1958). "Moreover, when an act defines its terms, those terms must be construed according to the definitions contained in the act." *People ex rel. Scott v. Schwulst Building Center, Inc.*, 89 Ill. 2d 365, 371 (1982); accord *Garza v. Navistar International Transportation Corp.*, 172 Ill. 2d 373, 379 (1996).

We note that the appellate court has specifically used Pension Code section 5—113 as a guide to interpret the phrase "act of duty" in section 3—114.1. *Trettenero v. Police Pension Fund*, 268 Ill. App. 3d 58, 64-65 (1994); *Olson v. City of Wheaton Police Pension Board*, 153 Ill. App. 3d 595, 598-99 (1987). However, in *Worth v. Board of Trustees of the Police Pension Fund*, 230 Ill. App. 3d 349, 354-55 (1992), the appellate court criticized this analysis. The court in *Worth* relied on Pension Code section 5—102, which provides that the terms used in

article V shall have the meaning ascribed to them by the definitional sections in article V. 40 ILCS 5/5—102 (West 1994). Based on this section, the *Worth* court reasoned that the definition of an "act of duty" in article V of the Code applied only to cases brought under article V. Thus, the *Worth* court concluded that the definition of "act of duty" in article V of the Code could not be used in a case arising under article III.

We disagree with this reasoning in *Worth*. Initially, just because the legislature provided that a phrase used in article V, *e.g.*, "act of duty," is to have the meaning ascribed to it in that article does not mean that the legislature intended the identical phrase in article III to have a different meaning. It is fundamental that where a word or phrase is used in different sections of the same legislative act, a court presumes that the word or phrase is used with the same meaning throughout the act, unless a contrary legislative intent is clearly expressed. *Schwulst Building Center*, 89 Ill. 2d at 372; *Moran v. Katsinas*, 16 Ill. 2d 169, 174 (1959). Based on this principle, this court has approved the use of definitions of phrases in article V of the Pension Code in cases arising under article III. *Borg v. Village of Schiller Park Police Pension Board*, 99 Ill. 2d 376, 381 (1984).

Moreover, the legislature expressly provided that article, division, or section headings in the Pension Code do not "govern, limit, modify or in any manner affect the scope, meaning or intent of the provisions of any Article, Division or Section hereof." 40 ILCS 5/1—103 (West 1994). The reasoning in *Worth* on this point is erroneous and is not to be followed.

Pension Code section 5—113 defines an "act of duty" as follows:

"Act of Duty. 'Act of duty': Any act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman by the statutes of this State or by the ordinances or

police regulations of the city in which this Article is in effect or by a special assignment; or any act of heroism performed in the city having for its direct purpose the saving of the life or property of a person other than the policeman." 40 ILCS 5/5—113 (West 1994).

We agree with the following principles that have developed in applying Pension Code section 3—114.1, read together with section 5—113, to claims of duty-related stress:

"In examining claims of duty-related stress like the one made in the instant case, courts have required that plaintiff-police officers demonstrate their disabilities are the result of a specific, identifiable act of duty unique to police work. (*Ryndak v. River Grove Police Pension Board* (1993), 248 Ill. App. 3d 486, 490; *Wall v. Police Pension Board* (1988), 178 Ill. App. 3d 438, 444; *Olson v. City of Wheaton Police Pension Board* (1987), 153 Ill. App. 3d 595 (cited with approval in *Ryndak* and *Wall*).) Conversely, where the disability is traceable only to the 'general nature of being a police officer' and not to a specific act of police service, line-of-duty disability pensions are denied. (See *Ryndak*, 248 Ill. App. 3d at 490.) Similarly, where the causes of the stress are not unique to police work, line-of-duty disability pensions are also denied. (See *Wall*, 178 Ill. App. 3d at 444; *Ryndak*, 248 Ill. App. 3d at 490.) These general rules are an outgrowth of judicial attempts to define and apply the term 'act of duty' to cases involving claimed psychological disabilities." *Trettenero*, 268 Ill. App. 3d at 63-64.

Courts reason that civilians regularly suffer stress in many aspects of their jobs. Thus, to be eligible for a line-of-duty disability pension based on stress, a police officer's psychological disability must result from "a 'special risk, not ordinarily assumed by a citizen in the ordinary walks of life.' " *Olson*, 153 Ill. App. 3d at 599, quoting Ill. Rev. Stat. 1985, ch. 108$^{1}$/2, par. 5—113, now codified at 40 ILCS 5/5—113 (West 1994); accord *Batka v. Board of Trustees of the Village of Orland Park Police Pension Fund*, 186 Ill. App. 3d 715, 724 (1989).

In reversing the circuit court and the Board in this case, the appellate court did not address these principles. The appellate court began its reasoning with the phrase from section 3—114.1: "incurred in or resulting from the performance of an act of duty." 40 ILCS 5/3—114.1 (West 1994). The court reasoned that the words "incur" and "resulting from" were equivalent to the word "cause." The court then reasoned that the tort concept of proximate cause allows for more than one cause of an injury. Thus, the court concluded that a disabled police officer should not be deprived of a line-of-duty disability pension as long as one of the causes of the disability resulted from an act of duty. 283 Ill. App. 3d at 827-28. The appellate court entered judgment in favor of Robbins for a line-of-duty disability pension because "Robbins' debilitating mental condition was caused, at least in part, by his on-duty functions as a police officer." 283 Ill. App. 3d at 829.

This circuitous reasoning and its conclusion are erroneous. The appellate court awarded Robbins a line-of-duty disability pension based on generalized police stress of multiple origins that caused his disability. The court based this conclusion on the common law concepts of negligence and proximate cause, and not on the plain language of the Pension Code. "However, a court should not attempt to read a statute other than in the manner in which it was written. In applying plain and unambiguous language, it is not necessary for a court to search for any subtle or not readily apparent intention of the legislature." *DiFoggio*, 156 Ill. 2d at 383; see *Laborer's International Union of North America, Local 1280 v. Illinois State Labor Relations Board*, 154 Ill. App. 3d 1045, 1057-60 (1987).

As the Board notes, this is a statutory action with explicit requirements and not a common law negligence action. The appellate court had to look no further than

the plain language of the Pension Code, which requires that the line-of-duty disability result from an act of duty.

### The Present Case

It is undisputed that Robbins suffered from stress, which in turn led to, *inter alia*, depression and alcohol abuse. What is disputed is the source of the stress. In his brief before this court, Robbins claims that his mental disability "resulted from an act of duty and was not a result of generalized stress." He argues that the report of the Board's psychologist, Dr. Ostrov, and the reports of his three psychologists, Drs. David Gilliam, James Peterson, and Michael Althoff, all "indicate conclusively" that his disability resulted from witnessing the January 1, 1990, shotgun suicide.

Robbins misreads the record. The Board's psychologist, Dr. Ostrov, concluded that while Robbins' stress was related to his police work, the stress was not connected to any specific act of Robbins as a police officer. The conclusions of Robbins' own three psychologists accord with that of Dr. Ostrov. Drs. Althoff and Peterson each concluded that Robbins had significant daily stress beginning with his reassignment to patrol duty in 1988. Dr. Gilliam specifically concluded: "1. Mr. Robbins' past exposure to occasional violence was *not* problematic for him. 2. His continuous exposure to possible violence, *as well as the pace of his duties in general*, were of considerable stress." (Emphasis added.) The Board found that this record contained insufficient evidence that the stress resulted from the performance of an act of duty.

We cannot say that the Board's decision was against the manifest weight of the evidence. Rather, this record contains ample evidence that Robbins' stress was the result of his anxiety over his job performance, which civilians regularly suffer, and not the performance of a specific act of duty. See, *e.g.*, *Trettenero*, 268 Ill. App. 3d at 68-69 (and cases cited therein).

This is not a case where a police officer's injury resulted from the performance of a specific act of duty. See, *e.g.*, *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 114 Ill. 2d 518 (1986). Also, our decision here does not mean that a police officer can never receive a line-of-duty disability pension for a psychological disability. Of course, Robbins still receives a nonduty disability pension. See 40 ILCS 5/3—114.2 (West 1994).

## CONCLUSION

Courts liberally construe pension laws in favor of those to be benefitted. *Colton v. Board of Trustees of the Firemen's Pension Fund*, 287 Ill. 56, 61 (1919); *Hahn v. Police Pension Fund*, 138 Ill. App. 3d 206, 211 (1985). However:

> "[w]hile a pension act should be liberally construed to effect the object sought to be accomplished, yet if the legislative intention is obvious from the language used that intention must be made effective, and the judiciary will not be warranted in giving the act a meaning not expressed in it." *Sup v. Cervenka*, 331 Ill. 459, 463 (1928).

For the foregoing reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court of Jackson County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE HARRISON, dissenting:

The appellate court viewed this case as presenting the question of whether a police officer should receive a line-of-duty pension where injuries arising from an act of duty were one cause of his disability, but not the sole cause. If that view were correct, resolution of this case would be straightforward. There is no "sole cause" requirement. The Illinois Pension Code states simply that the disability must have resulted from sickness, accident or injury incurred in or resulting from the per-

formance of an act of duty. 40 ILCS 5/3—114.1 (West 1992). Under this statute, the duty-related incident need not have been the originating or primary cause of the disabling injury. *Barber v. Board of Trustees of the Village of South Barrington Police Pension Fund*, 256 Ill. App. 3d 814, 818 (1993). In order to qualify for a line-of-duty pension, a police officer need only show that a duty-related injury contributed to his disability (*Wilfert v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 263 Ill. App. 3d 539, 543 (1994)), *i.e.*, that the injury was *a* cause of the disability (*Wilfert*, 263 Ill. App. 3d at 545).

The matter before us today poses a more fundamental question. The real issue here, as my colleagues correctly recognize, is whether any part of the injury that caused plaintiff's disability can be characterized as having resulted from performance of an "act of duty."

There is no dispute that what disabled plaintiff was psychological stress. There is likewise no dispute that the stress is causally related to plaintiff's employment as a police officer. The reason the Pension Board and my colleagues nevertheless conclude that plaintiff is ineligible for a line-of-duty pension has to do with the source of plaintiff's stress.

The majority correctly holds that for a police officer to qualify for a line-of-duty pension based on psychological stress, the disability must result from a "special risk, not ordinarily assumed by a citizen in the ordinary walks of life" (40 ILCS 5/5—113 (West 1994)). 177 Ill. 2d at 542. The majority is wrong, however, in the way it applies that limitation to the facts of this case.

The majority asserts that the statute was not satisfied here because what disabled plaintiff is anxiety over job performance, an affliction "civilians regularly suffer." 177 Ill. 2d at 544. At first blush this characterization appears entirely reasonable. Working for a police

department can pose many of the same challenges and demands as working in any other hierarchical organization. In terms of factors such as bureaucracy, paperwork, dealing with supervisors, competition for promotion, lack of recognition, and dissatisfaction with scheduling, little may differentiate law enforcement from civilian occupations.

The problem is that the plaintiff's problems here involved more than these generic organizational stressors. Difficulty keeping up with reports and criticism over the timeliness and accuracy of those reports unquestionably played a role in plaintiff's condition. At the heart of plaintiff's problem, however, was something far more serious. What precipitated plaintiff's disability was his transfer back to patrol duty.

The dangers and physical demands of patrol duty have no analogue in civilian life. They are qualitatively different from those attendant to civilian occupations. Civilians may be concerned about their ability to perform their jobs and how well they are keeping up with their coworkers, but how many of them have the power to save or to take lives, as patrol officers do? How many face the possibility of being shot every time they go to work, as patrol officers do? How many are required to confront disaster and violence and tragedy and death, as patrol officers are?

These were not abstractions for plaintiff. He had faced death on the job, and the evidence established that the continuous exposure to possible violence was something he could no longer tolerate. To dismiss this as the kind of job performance anxiety that "civilians regularly suffer" diminishes the scope of the pressures facing plaintiff and is an affront to law enforcement professionals.

Even if my colleagues' comparison were apt, which it is not, their analysis would still be flawed. The fact

that a police officer was disabled as the result of factors common to other occupations is not dispositive of his right to a line-of-duty pension. Rather, "[t]he crux is the capacity in which the police officer is acting." *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 114 Ill. 2d 518, 522 (1986). As long as the disabling events occurred while the officer was performing his duties as a patrolman, the provisions of section 3—114.1 of the Pension Code apply, and the officer qualifies for a line-of-duty pension. *Johnson*, 114 Ill. 2d at 522.

Such a conclusion does not ignore the statutory requirement that "special risk" be involved. Rather, it acknowledges that "special risk" inheres in all police work. Even the most mundane activities, such as crossing the street, have an added dimension when done in the context of law enforcement. That is why we adopted the view, taken in other jurisdictions, that " '[a] policeman is actually engaged in the performance of his duty for the protection of life and property whenever he is carrying out the official orders or requirements of his office.' " *Johnson*, 114 Ill. 2d at 523, quoting *Blanchard v. New Orleans Police Department*, 210 So. 2d 585, 588 (La. App. 1968). See also 40 ILCS 5/3—114.1 (West 1994) (police officer considered "on duty" while on any assignment approved by the chief of police).

As an additional basis for its decision, the majority suggests that plaintiff is ineligible for a line-of-duty pension because his disability cannot be traced to any single, specific incident. Although this approach has support in the line of appellate court decisions represented by *Trettenero v. Police Pension Fund*, 268 Ill. App. 3d 58 (1994), which the majority cites, there is nothing in the Pension Code itself imposing such a requirement.

To engraft this restriction on the Pension Code is be-

yond our authority as judges and would yield results that make no sense. Under the majority's "single incident" rule, if a police officer was involved in a particular incident that was so traumatic that he could no longer perform his work, the officer could collect a line-of-duty pension. If, however, the officer's debilitating trauma did not come until after a series of lesser events, none of which was significant by itself, but whose cumulative effect was every bit as serious, a line-of-duty pension would be denied.

Underlying the majority's view is the notion that line-of-duty pensions are appropriate only where an officer has been wounded in a shoot-out, or injured during a high-speed pursuit, or otherwise incapacitated during some obviously dangerous clash with criminal elements. What my colleagues forget is that we have previously addressed this view and specifically rejected it as "overly restrictive and unrealistic." *Johnson*, 114 Ill. 2d at 522-23. I see no reason to take a contrary position now.

The principle that pension laws are to be construed liberally in favor of those to be benefitted (see, *e.g.*, *Johnson*, 114 Ill. 2d at 521; *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 217 (1983)) should be the cornerstone of the majority's analysis. Instead, it did not merit even a passing reference until the very end of the majority's opinion. This omission is a telling one and is indicative, I think, of a fundamental hostility to plaintiff's claim.

On any given day at any given place or time, a policeman on the beat has more power over the citizens he encounters than the President of the United States. This is an awesome and profound responsibility. Inevitably some will find the pressure overwhelming. When that happens, when they can no longer go on, the General Assembly has seen to it, through the Illinois Pension Code, that they will be afforded some measure of

relief for their efforts. We should be grateful to them for their service and happy to see that they receive as much as the law allows. Donnie Robbins should receive the line-of-duty pension to which he is entitled. I therefore dissent.