KENNETH ANTONELLI, Plaintiff-Appellant, v. BOARD OF TRUSTEES OF THE HILLSIDE POLICE PENSION BOARD *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—96—1580

Opinion filed March 31, 1997.

Stanley H. Jakala, of Berwyn, for appellant.

Richard J. Puchalski, of Sklodowski, Franklin, Puchalski & Reimer, of Chicago, for appellees.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff Kenneth Antonelli appeals from the judgment of the circuit court affirming an administrative order of the Board of Trustees of the Hillside Police Pension Board (board) revoking his disability pension. He contends that the board's termination of his benefits was against the manifest weight of the evidence.

Plaintiff, a police officer with the Hillside police department, was granted a duty-related disability pension in March 1981. At a hearing before the board in August 1991, plaintiff appeared without counsel and acknowledged that he had not submitted the most recent required annual medical report. Plaintiff stated that he had degenerative disk disease and was still experiencing lower back pain for which he now took Tylenol or Motrin. He played no sports and worked part-time from his home preparing Medicare and supplemental insurance forms for senior citizens. The hearing was continued to permit plaintiff to visit his own physician and provide the board with medical documentation to support his claim.

At the time, the board had before it reports by two physicians who had examined plaintiff. In a March 1990 report by Dr. John Dwyer, plaintiff was given no restrictions for sitting, standing, walking or motor vehicle operation. He was restricted from bending, stooping or squatting repetitively and restricted from lifting more than 20 pounds with "occasional" lifting up to 45 pounds. Dr. Dwyer recommended that plaintiff be assigned to "light duty," which could be modified upward as plaintiff's weight tolerance improved. The doctor's report was based upon a low back evaluation by a physical therapist.

The board also had a May 1990 report by Dr. David Spencer, who stated that plaintiff's X rays were normal and that plaintiff did not report significant pain or disability. Plaintiff had refused to have a lumbar CT scan, which the doctor had recommended because there had been no diagnostic tests for three years. In a followup report at the end of August 1991, Dr. Spencer reported that plaintiff was not disabled to perform the duties of a policeman, and he prescribed no medication.

In September 1991 plaintiff submitted a report by Dr. William Dobozi, who stated that plaintiff reported "more pain in his lower back and recurrence of his sciatic pain into his left leg and left foot" and that the pain was worse than previously experienced. According to Dr. Dobozi, plaintiff's sciatic-type symptoms prevented him from doing heavy work or police work, and no change in plaintiff's condition warranted his return to work.

On October 16, 1991, the board issued its order rescinding plaintiff's disability pension. It found that plaintiff had failed to produce any evidence to support his continuing disability. It acknowledged Dr. Dobozi's report but stated that Dr. Dobozi had relied solely upon plaintiff's subjective complaints of pain. Plaintiff then filed a complaint requesting administrative review.

After a hearing, the circuit court remanded the case to the board for further administrative proceedings to allow introduction of additional evidence and retained jurisdiction over the case.

Plaintiff was again examined by the board's physicians and permitted to take their evidence depositions. He also visited Dr. Dobozi several times, and Dr. Dobozi's evidence deposition is part of the record. The report of Dr. Ronald Cheff, who examined plaintiff on October 25, 1991, is also included in the record. Dr. Cheff reported that plaintiff complained of persistent pain down his leg and pain to the left lumbar region. In his opinion plaintiff suffered from an L4-L5 root lesion on the left side. His report was supported by an EMG study.

When Dr. Dobozi examined plaintiff in February 1993, plaintiff still continued to complain of lower back pain radiating into his left leg, and plaintiff stated that any activity increased the pain. The doctor confirmed that the 1991 EMG showed a nerve root lesion, which was the same as that shown in the 1981 EMG. In Dr. Dobozi's opinion, plaintiff was not able to return to his duties as a policeman. Dr. Dobozi's examination of plaintiff on January 18, 1994, which was supported by current X rays, was essentially the same.

In his deposition on March 10, 1994, Dr. Dobozi explained that plaintiff probably had a bulging disk that pressed on his sciatic nerve

producing pain down his leg. The disk was not herniated. Dr. Dobozi also believed that plaintiff suffered from lumbosacral radiculitis, an inflammation of the nerve root which referred pain into the leg, and radiculopathy, weakness in the muscles supplied by the damaged nerves. In Dr. Dobozi's opinion, plaintiff could forego surgery as long as he performed only light activities, such as desk work. Surgery was no guarantee that his pain would be alleviated and physical therapy was temporary and not curative. In Dr. Dobozi's opinion, plaintiff's symptoms required conservative care in an effort not to herniate the bulging disk. For this he had prescribed anti-inflammatory and pain medications.

Another examination by Dr. Dobozi was conducted on February 16, 1995. It revealed that plaintiff now suffered from a degenerative disk and that the injury was permanent.

Dr. Spencer evaluated plaintiff in February 1993 and June 30, 1994. He noted that plaintiff was having psychiatric problems but was in no discomfort with respect to his lower back condition. At his deposition on May 16, 1995, Dr. Spencer testified that the board had not forwarded any diagnostic records for his evaluation of plaintiff. He also testified that he did not make any specific observations about repetitive bending and lifting because repetitive work was not within a policeman's job description. His opinion was based upon his understanding of what a policeman routinely did.

Dr. Spencer recalled recommending that plaintiff undergo a CAT scan, which would show any evidence of nerve route compression due to tumors, infection, fractures, spinal stenosis, and disk herniation. An EMG identified nerve dysfunction. In reviewing Dr. Cheff's report, Dr. Spencer testified that a root lesion did not necessarily mean that plaintiff had radiculitis, and radiculitis referred to sciatic symptoms of pain, tingling and numbness.

In reviewing Dr. Dobozi's evaluations of plaintiff for the board over the years, Dr. Spencer testified that it was possible for plaintiff to have intermittent sciatic pain. Referring to the 1981 EMG, the doctor agreed that plaintiff showed nerve damage at the base of his spine and that the cause of the lesion was probably a disk herniation, which could cause pain during activities.

Dr. Spencer was also shown plaintiff's 1995 MRI. He stated that the MRI confirmed plaintiff's disk degeneration "with a protrusion of disk herniation." In his opinion, plaintiff's 1980 trauma could have caused a disk herniation, which in turn could have caused the L4-L5 root lesion, but plaintiff was still fit for police work because his was not an unusual MRI scan for a 40-year-old man. Dr. Spencer also stated that disk herniations shrink and resorb in time, and a herni-

ated disk does not stay symptomatic forever. He discounted plaintiff's complaints of pain and suggested that plaintiff's functional capacity indicated that he should have no trouble with any activity as long as it was not repetitive. Dr. Spencer stated that he essentially agreed with Dr. Dobozi, who ultimately determined that plaintiff could not perform heavy duty work. This was because Dr. Spencer believed that police work was not heavy duty and did not involve repetitive activities. He also opined that plaintiff's back condition was not so fragile that if he were involved in an altercation he would be any more likely to have a back injury than anyone else and that plaintiff could aggravate his back temporarily but that it would resolve without surgery.

Dr. Ryan testified during his May 1995 deposition that in his two examinations of plaintiff he could not find any objective evidence for plaintiff's back pain and that in his opinion plaintiff did not have a clinically permanent partial disability. He was unable to produce pain in plaintiff upon manipulation. In Dr. Ryan's opinion, plaintiff was at the third or end stage of spinal diagnosis. The first stage was dysfunction, where the spine was nearing degeneration and the individual experienced pain. The second state was instability with more severe pain because the spinal segment was unstable. The last stage brought stability and less sciatic pain. When Dr. Ryan saw plaintiff in 1993 and 1994, he believed that plaintiff had stabilized.

Dr. Ryan also examined plaintiff's 1995 MRI results and Dr. Dobozi's letter. The results did not change his opinion of plaintiff's status. The MRI showed a degenerated disk that had produced pain symptoms in the past, and an MRI showed disk degeneration better than a CAT scan. In evaluating Dr. Dobozi's report, Dr. Ryan stated that Dr. Dobozi did not provide enough documentation to verify his contention that plaintiff was permanently disabled. He also confirmed Dr. Spencer's opinion that sciatic pain was intermittent, but Dr. Ryan believed that police work was heavy work.

At the second hearing before the board on September 14, 1995, plaintiff testified that his former duties as a policeman had required him to bend and squat and that occasionally he became physically involved with suspects. He now was employed as a medical courier and spent approximately 20 hours per week in a car.

The board then issued its second decision. It stated that plaintiff had failed to meet his burden of proof, he was not disabled and there was no reason for the board to change its earlier decision. It certified him fit for duty, giving greater weight to the medical reports of Drs. Dwyer, Spencer and Ryan than to the report of Dr. Dobozi. The board also noted that the only time plaintiff saw Dr. Dobozi was when he

needed a letter to submit to the board. Plaintiff's pension was revoked as of October 16, 1991, the date of the first decision. The circuit court affirmed the board's decision, stating that it could not reweigh the evidence. Plaintiff appealed.

■ Plaintiff contends that the board's 1995 decision is against the manifest weight of the evidence. The findings and conclusions of the administrative agency on questions of fact are held to be *prima facie* true and correct, and such findings will be upheld on review unless they are against the manifest weight of the evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). The board's decision should not be set aside by the reviewing court unless an opposite conclusion is clearly evident. *Whelchel v. Edgar*, 195 Ill. App. 3d 406, 409 (1990). The function of the reviewing court is not to reweigh the evidence but to determine whether the agency's decision is against the manifest weight of the evidence. *Peterson v. Board of Trustees, Des Plaines Firemen's Pension Fund*, 54 Ill. 2d 260, 262-63 (1973). An administrative decision is not contrary to the manifest weight of the evidence merely because an opposite conclusion is reasonable or because the reviewing court might have ruled differently. *Collura v. Board of Police Commissioners*, 135 Ill. App. 3d 827, 838 (1985).

■ Here, the medical evidence was as follows:

March 1990—Dr. Dwyer found that plaintiff could return to light duty with occasional lifting up to 45 pounds.

May 1991—Dr. Spencer found that plaintiff had no significant back problems and he concluded that plaintiff could return to police duties.

October 1991—Dr. Cheff reported that plaintiff had a nerve root lesion. His report was supported by a current EMG.

February 1993—Dr. Dobozi confirmed that plaintiff's nerve root lesion was the same as in 1980. Plaintiff should not return to work. He relied on the 1991 EMG.

February 1993—Dr. Spencer reaffirmed that his examination of plaintiff failed to reveal any abnormalities of the spine and plaintiff could return to police work.

May 1993—Dr. Ryan noted that plaintiff appeared healthy, had no permanent disability and should be able to return to work.

January 1995—Dr. Dobozi again noted plaintiff's persistent pain and stated that plaintiff should not return to police duties. This report was supported by current X rays.

July 1994—Dr. Spencer found that plaintiff's neurologic and orthopedic examinations were normal.

July 1994—Dr. Ryan found no objective evidence of pain and concluded that plaintiff could return to work.

June 1995—Dr. Dobozi stated that plaintiff still complained of pain and suffered from a degenerative disk, and his injury was permanent. He relied on a recent MRI.

Only Dr. Dobozi concluded that plaintiff should not return to police work. Otherwise, the doctors agreed that plaintiff suffered from a nerve root lesion, which caused him sciatic and other pain. Drs. Spencer and Ryan both believed that plaintiff had "stabilized," that his pain would come and go but that he could perform police work. Dr. Dobozi thought that police work was "heavy work"; Dr. Spencer thought it was light duty and that an altercation would not exacerbate his condition permanently. Under section 3—116 of the Illinois Pension Code, if a police officer is found upon medical examination to have recovered from a disability, the board shall certify to the chief of police that the officer is no longer disabled. 40 ILCS 5/3—116 (West 1994). We must conclude that the board's determination was not against the manifest weight of the evidence and the circuit court did not err in affirming the board's decision.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

BUCKLEY and O'BRIEN, JJ., concur.