**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210381-U

Order filed November 23, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| BRADLEY HUTCHINSON, | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Peoria County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-21-0381 |
| | ) | Circuit No. 20-MR-813 |
| BOARD OF TRUSTEES OF THE | ) | |
| PEORIA POLICE PENSION FUND, | ) | The Honorable |
| | ) | David A. Brown, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices McDade and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  In an appeal in an administrative-review proceeding involving a pension board's denial of a disability pension to an allegedly disabled police officer, the Appellate Court found that the pension board's ruling was against the manifest weight of the evidence.  The appellate court, therefore, affirmed the trial court's judgment, reversing the pension board's decision and awarding the police officer a line-of-duty disability pension, and reversed the pension board's ruling.

¶ 2    Plaintiff, Bradley Hutchinson, a Peoria police officer who was injured on duty while trying to gain control of a handcuffed suspect, filed an application with defendant, the Board of Trustees of the Peoria Police Pension Fund (Pension Board), for a line-of-duty disability pension

or, in the alternative, a not-on-duty disability pension. After an evidentiary hearing, the Pension Board found that Hutchinson was not disabled for service as a police officer and denied Hutchinson's request for either form of disability pension. On administrative review, the trial court reversed the Pension Board's decision and awarded Hutchinson a line-of-duty disability pension. The Pension Board appeals. We affirm the trial court's judgment and reverse the Pension Board's ruling.

¶ 3                                    I. BACKGROUND

¶ 4        Hutchinson worked for the City of Peoria (City) as a police officer for over 16 years and held the rank of patrolman. On March 24, 2017, Hutchinson injured his left shoulder while on duty when he took a suspect to the ground who was resisting a pat-down search. Hutchinson promptly reported the injury to his supervisor and went to the emergency room for treatment. A later magnetic resonance imaging (MRI) scan showed Hutchinson had a labrum tear and tendinosis of the two rotator cuff components of his left shoulder. Hutchinson was initially placed on light duty at the police department but was subsequently put on administrative leave and later terminated following a police department investigation into his conduct in an unrelated work matter.

¶ 5        In July 2017, shortly before his employment with the City was terminated, Hutchinson filed an application with the Pension Board for a line-of-duty disability pension or, in the alternative, a not-on-duty disability pension. Hutchinson stated in his application that he was disabled because he had undergone surgery on his left shoulder, his recovery was not going as expected, and he might have permanent restrictions placed upon him that would prevent him from working as a police officer.

2

¶ 6        Over the course of four days in 2018, 2019, and 2020, the Pension Board held an evidentiary hearing on Hutchinson's application. The City initially intervened in the proceedings but subsequently withdrew after it reached an agreement with Hutchinson. During the proceedings, the Pension Board heard live testimony and admitted into evidence numerous exhibits, including the reports of several doctors and hundreds of pages of Hutchinson's medical records. The evidence presented at the Pension Board hearing can be summarized as follows.

¶ 7        The only live witness to testify before the Pension Board was Hutchinson. Hutchinson testified that he was 49 years old, was married, and had six children. Hutchinson became a full-time police officer in 1993 or 1994 in another jurisdiction. In October 2000, Hutchinson was hired by the City as a police officer. Prior to starting his employment with the City, Hutchinson was given, and passed, a pre-employment medical examination. Hutchinson worked for the City as a police officer for over 16 years and was assigned to patrol.

¶ 8        On March 24, 2017, Hutchinson responded to a 9-1-1 call regarding a domestic dispute. When Hutchinson arrived at the scene, Officer Cowan was already there and had a male suspect in handcuffs. The suspect was not cooperating, and a crowd was gathering. Cowan asked Hutchinson to take the suspect over to Hutchinson's car and told Hutchinson that he had not yet had an opportunity to pat the suspect down. After Hutchinson walked the suspect to Hutchinson's car, he tried to pat the suspect down, and the suspect made a sudden violent dash toward Hutchinson's left. Hutchinson tried to gain control of the suspect, and he and the suspect ended up going to the ground. When they did so, Hutchinson heard and felt a pop in his own left shoulder and felt pain in that area. Hutchinson held onto the suspect, and other officers helped Hutchinson place the suspect into Hutchinson's squad car.

¶ 9 After Hutchinson was finished at that location, he reported his injury to the City. The City sent Hutchinson to OSF Center for Occupational Health (OSF) for treatment. Hutchinson was eventually referred to Dr. Brent Johnson, an orthopedic shoulder specialist at Midwest Orthopaedic Center in Peoria. Johnson recommended that Hutchinson obtain surgery and participate in physical therapy (PT). Before the surgery took place, Hutchinson was initially put on light duty at the police department. However, in April 2017, Hutchinson was placed on administrative leave because his conduct in an unrelated work matter was being investigated by the police department (the ongoing investigation).

¶ 10 In May 2017, Dr. Johnson performed surgery on Hutchinson to repair his left shoulder. A week or two after the surgery, Hutchinson started PT. In July 2017, the City terminated Hutchinson's employment as a result of the ongoing investigation.

¶ 11 In October 2017, as Hutchinson was nearing completion of the first course of PT, a functional capacity evaluation (FCE) was ordered by Dr. Johnson. Before the FCE could take place, however, Hutchinson was involved in a car accident in Iowa. The accident occurred when Hutchinson's son fell asleep at the wheel, drove into the center median, and rolled the vehicle an undetermined number of times. Hutchinson was lying in the backseat when the crash occurred. He injured his neck and back (his cervical and thoracic spine), spent four days in the hospital in Iowa, and was treated by a neurosurgeon in Iowa. Hutchinson did not reinjure his left shoulder in the crash. The following month, Hutchinson finished his treatment with the neurosurgeon and was cleared to participate in the FCE.

¶ 12 Before the FCE took place, Hutchinson was examined by three doctors on behalf of the Pension Board: Dr. Leon Huddleston, Dr. David Anderson, and Dr. James Boscardin. According

to Hutchinson, at those examinations, he told all three doctors about his car accident. In December 2017, Hutchinson participated in an FCE.

¶ 13    In January 2018, Hutchinson had a follow-up appointment with Dr. Johnson. Hutchinson told Johnson that he was still having a lot of pain, loss of strength, and loss of range of motion in his left shoulder. Johnson felt that Hutchinson was at maximum medical improvement (MMI) and did not believe that Hutchinson would receive any additional benefit from traditional treatment. Johnson told Hutchison that he might have to consider having a shoulder replacement done in the future, although such a procedure would not allow Hutchinson to return to work as a police officer. At that time, Hutchinson's use of his left arm was restricted. Johnson recommended that Hutchinson be very limited with his overhead lifting and that he have no confrontational situations.

¶ 14    At Hutchinson's attorney's request, after the FCE was conducted, Hutchinson was examined by Dr. David Fletcher. Fletcher told Hutchinson that Hutchinson was at MMI; that at some point, a shoulder replacement would probably be a viable option for Hutchinson; and that Hutchinson would not be able to return to work as a police officer.

¶ 15    In May 2018, at the first day of the Pension Board hearing, there was a suggestion that Hutchinson complete another course of PT and have a second FCE conducted. Hutchinson and his attorney discussed that suggestion, and Hutchinson subsequently went ahead and completed another course of PT. During PT, the pain in Hutchinson's left shoulder did not improve and got slightly worse. After Hutchinson completed the full course of PT, he went back to Dr. Johnson. Johnson still felt that Hutchinson was at MMI and that Hutchinson would not be able to return to work as a police officer. Johnson had a further discussion with Hutchinson at that time about possibly having a shoulder replacement done.

5

¶ 16    Thereafter, Hutchinson was again examined by Dr. Fletcher and a second FCE was conducted. The second FCE showed that Hutchinson was not able to meet the job requirements of a police officer. Fletcher felt that Hutchinson was at MMI, that the car accident had not affected Hutchinson's shoulder recovery, and that Hutchinson would probably need a shoulder replacement in the future. Fletcher again told Hutchinson, however, that a shoulder replacement would not allow Hutchinson to return to work as a police officer.

¶ 17    As of the date of his testimony, Hutchinson still had a lot of pain, weakness, and a decreased range of motion in his left shoulder. Hutchinson had obtained a job as a sales associate at a car dealership in February 2018 and was still working at that job. In that position, Hutchinson was not required to exceed the restrictions placed upon him by Dr. Johnson.

¶ 18    On cross examination, Hutchinson indicated that he had one prior injury to his left shoulder. In approximately October 2016, Hutchinson had dislocated his left shoulder when he tried to break up a bar fight while he was off duty. Hutchinson went to the hospital for that injury and was subsequently treated by Dr. Johnson. Although not quite sure, Hutchinson thought that after that injury, he was placed on light duty at the police department for about four to six weeks. The injury got better with conservative treatment, and Hutchinson did not require surgery. Hutchinson was eventually released by Johnson and by the City's physician for full and unrestricted duty as a police officer and returned to his assignment in patrol. Hutchinson had no other symptoms or problems with his left shoulder prior to the March 2017 incident and had full use and mobility of his left shoulder.

¶ 19    The March 2017 9-1-1 call that Hutchinson responded to was considered by the police department to be an emergency call. The suspect was eventually charged with resisting for his conduct with Hutchinson, but Hutchinson did not know if the suspect had also been charged with

battery or aggravated battery for that conduct. After the March 2017 incident, Hutchinson was put on light duty for a short period of time and then was placed on administrative leave due to an ongoing police department investigation into his conduct relating to another work matter. As a result of that investigation, Hutchinson's employment with the City was terminated in July 2017. Hutchinson later filed a grievance with the City over his termination. In January 2019, Hutchinson settled his claim against the City and withdrew his grievance. As part of that settlement, the City's termination of Hutchinson was rescinded, and Hutchinson was allowed to resign.

¶ 20     According to Hutchinson, no permanent light duty position was ever offered or made available to him in the Peoria police department. Hutchinson had followed all of the medical treatment recommendations that his treating physicians made. There was no recommended treatment that Hutchinson had refused to complete. Hutchinson had filed a workers' compensation case related to the injuries he sustained in the March 2017 incident. That case settled in late 2018 or early 2019.

¶ 21     Hutchinson stated further in his testimony that Dr. Huddleston was the only doctor that had said that Hutchinson could return to full and unrestricted duty as a police officer (that Hutchinson was not disabled). Huddleston gave that opinion in his supplemental report, which was done before the April 2019 FCE had been conducted.

¶ 22     As noted above, in addition to the live testimony presented at the hearing, the Pension Board also had before it numerous exhibits that were admitted into evidence. For the most part, those exhibits fell under two main categories: (1) Hutchinson's medical records; and (2) the written reports and curricula vitae of doctors who had conducted independent medical

7

examinations of Hutchinson.  Of relevance to this appeal, those exhibits established the following information.

¶ 23       In March 2017, on the date of his work injury, Hutchinson initially saw Dr. David Braun, an occupational medicine doctor at OSF.  Braun noted that Hutchinson had experienced a "[b]ig mechanism and a 'pop' sensation" and that Hutchinson was exhibiting severe limitations in his range of motion and weakness in external rotation.  Braun suspected an "internal derangement" and ordered that an MRI be taken of Hutchinson's shoulder to expedite Hutchinson's care.

¶ 24       In April 2017, Hutchinson had a follow-up appointment with Dr. Braun.  Braun told Hutchinson that the MRI showed that Hutchinson had a labrum tear and tendinosis of the two rotator cuff components of his left shoulder.  At Braun's recommendation, Hutchinson was put on light duty and was referred to Dr. Brent Johnson, an orthopedic surgeon at Midwest Orthopaedic, for further treatment.  Hutchinson saw Dr. Johnson later that month.  Johnson took a history from Hutchinson, reviewed Hutchinson's MRI, and performed a left shoulder exam on Hutchinson.  Based upon Hutchinson's line of work, Johnson recommended that Hutchinson have surgery to repair his left shoulder.

¶ 25       In May 2017, Hutchinson was evaluated for PT at Midwest Orthopaedic.  The physical therapist recommended that Hutchinson participate in PT one to two times per week for the next four or five months or until the goals following the labral repair protocol were met.  A few days later, Dr. Johnson performed surgery (a shoulder arthroscopy and an anterior labral repair) on Hutchinson's left shoulder.  About two weeks after the surgery, Hutchinson began his first course of PT for his left shoulder at Midwest Orthopaedic.  Hutchinson participated in that first course of PT from May to September 2017.

8

¶ 26        In August 2017, an independent medical examination (IME) of Hutchinson was conducted, apparently as part of Hutchinson's workers' compensation case, by Dr. Mark Levin, an orthopedic specialist. In conducting his examination, Levin reviewed some of Hutchinson's prior and current medical records. Levin also met with Hutchinson, obtained a medical history from him, and conducted a physical examination. After conducting his evaluation, Levin found that Hutchinson was suffering from several different conditions in his left shoulder, including a labral tear and arthritis. Levin concluded that Hutchinson's conditions were either caused by the March 2017 incident directly or that the March 2017 incident had aggravated the pre-existing condition of Hutchinson's left shoulder (the condition that resulted from the 2016 injury). Levin believed that Hutchinson was approaching MMI and that the only additional treatment that Hutchinson could possibly need was a work conditioning program, depending upon the results of a valid FCE.

¶ 27        In September and October 2017, Hutchinson participated in a second round of PT for his left shoulder at Midwest Orthopaedic. Also in October 2017, Hutchinson had a follow-up visit with Dr. Johnson. Johnson recommended that Hutchinson continue with PT and that Hutchinson have an FCE conducted. A few days later, however, Hutchinson was injured in an unrelated car accident in Iowa and spent four or five days in the hospital. During the crash, Hutchinson suffered multiple spine fractures in his neck and back but did not reinjure his left shoulder.

¶ 28        In November 2017, Hutchinson had another follow-up visit with Dr. Johnson. Hutchinson told Johnson about the car accident and about the resulting injuries and hospitalization. Because of the car accident, Hutchinson was unable to obtain an FCE or participate in PT. Johnson recommended that Hutchinson wait until he was cleared by the

neurologist before having the FCE conducted. The neurologist cleared Hutchinson shortly thereafter.

¶ 29      Later that same month (November 2017), an IME of Hutchinson was conducted at the Pension Board's request by Dr. Leon Huddleston, a doctor who was board certified in physical medicine and rehabilitation. In conducting his examination, Huddleston reviewed numerous documents, including Hutchinson's disability application, various medical records, and the job description for a Peoria police officer. Huddleston also met with Hutchinson, obtained a medical history from him, and conducted a physical examination. After conducting his evaluation, Huddleston found that Hutchinson was suffering from several different conditions in his left shoulder, including a labral tear and osteoarthritis. Huddleston concluded that the nature and extent of those conditions rendered Hutchinson disabled from performing full and unrestricted police duties. In Huddleston's opinion, Hutchinson's disability was likely to last one year and was expected to worsen. With regard to the cause of Hutchinson's conditions, Huddleston opined that Hutchinson had suffered a previous injury to his left shoulder in August 2016 when he had attempted to break up a bar fight and dislocated his shoulder and that the March 2017 incident aggravated Hutchinson's condition and contributed to Hutchinson's disability. Huddleston noted in his report that Hutchinson had been involved in a car accident in October 2017 and had suffered skull and spine fractures as a result. Huddleston opined further that there was no additional reasonable medical treatment that would allow Hutchinson to recover from his disability and return to full and unrestricted police duty (full duty). According to Huddleston, the March 2017 incident had caused an acute or chronic injury and Hutchinson was at high risk for reinjury if he returned to full duty.

10

¶ 30     In early December 2017, an IME of Hutchinson was conducted at the Pension Board's request by Dr. David Anderson, a board certified orthopedic surgeon. In conducting his examination, Anderson reviewed numerous documents, including Hutchinson's disability application, various medical records, and the job description for a Peoria police officer. Anderson also met with Hutchinson, obtained a medical history from him, and conducted a physical examination. After conducting his evaluation, Anderson found that Hutchinson was suffering from several different conditions in his left shoulder, including a labral tear and arthritis. Anderson concluded that the nature and extent of those conditions rendered Hutchinson disabled from performing full and unrestricted police duties. In Anderson's opinion, Hutchinson's disability was likely to be permanent. With regard to the cause of Hutchinson's disability, Anderson opined that Hutchinson had suffered a previous injury to his left shoulder in August 2016 and that the March 2017 incident had aggravated Hutchinson's condition. Like Dr. Huddleston, Anderson noted that Hutchinson had been involved and injured in a car accident in October 2017. Anderson also opined that there was no additional reasonable medical treatment that would allow Hutchinson to recover from his disability and return to full and unrestricted police duty. Anderson recommended that Hutchinson could possibly undergo a total shoulder replacement if Hutchinson's symptoms worsened, but Anderson would not advise Hutchinson to return to work if that were the case.

¶ 31     A few days after Dr. Anderson's evaluation, an IME of Hutchinson was conducted at the Pension Board's request by Dr. James Boscardin, a board certified orthopedic surgeon. In conducting his examination, Boscardin reviewed numerous documents, including Hutchinson's disability application, various medical records, and the job description for a Peoria police officer. Boscardin also met with Hutchinson, obtained a medical history from him, and conducted a

physical examination. After conducting his evaluation, Boscardin found that Hutchinson was suffering from recurrent dislocation of the left shoulder. Boscardin concluded that the nature and extent of that condition rendered Hutchinson disabled from performing full and unrestricted police duties, although Boscardin believed that the disability was more of a temporary nature, at least until further information could be gathered from having an FCE conducted of Hutchinson. With regard to the cause of Hutchinson's disability, Boscardin opined that Hutchinson had suffered a previous injury to his left shoulder in August 2016 and that the March 2017 work incident had aggravated Hutchinson's condition and had contributed to Hutchinson's disability. Unlike the other two Pension Board doctors, Boscardin's report did not mention Hutchinson's recent car accident or his resulting injuries.

¶ 32      Later that same month (December 2017), an FCE of Hutchinson was conducted, which showed that Hutchinson was limited with overhead reaching strength at 20 pounds. During the FCE, all parts of Hutchinson's body, including those parts Hutchinson injured in the car accident, were tested. According to the FCE, Hutchinson was able to meet 31 of 32 job demands and was performing at 96.88% relative to the job demands.

¶ 33      In January 2018, Dr. Johnson re-checked Hutchinson. During that re-check, Johnson reviewed Hutchinson's FCE and gave Hutchinson a permanent 20 pound overhead lifting restriction. Johnson found Hutchinson to be at MMI and released Hutchinson from his care.

¶ 34      In February 2018, an IME of Hutchinson was conducted at the request of Hutchinson's attorney by Dr. David Fletcher, a doctor who was board certified in occupational and preventive medicine. In conducting his examination, Fletcher reviewed numerous documents, including Hutchinson's disability application, various medical records, and the job description for a Peoria police officer. Fletcher also met with Hutchinson and conducted a physical examination. After

conducting his evaluation, Fletcher found that Hutchinson was suffering from several different conditions in his left shoulder, including a labral tear and osteoarthritis. Fletcher concluded that the nature and extent of those conditions rendered Hutchinson disabled from performing full and unrestricted police duties. Fletcher believed that Hutchinson's disability was likely to be permanent. With regard to the cause of Hutchinson's disability, Fletcher opined that Hutchinson's March 2017 work injury had aggravated Hutchinson's pre-existing condition (degenerative osteoarthritis in his left shoulder). Fletcher found that Hutchinson had reached MMI, that Hutchinson remained limited with overhead reaching strength at 20 pounds, and that Hutchinson was permanently disabled for service as a police officer.

¶ 35        Later that same month (February 2018), Dr. Levin conducted a re-evaluation of Hutchinson's condition and issued a supplemental report, presumably as part of Hutchinson's workers' compensation case. In conducting that re-evaluation, Levin reviewed numerous documents, including the job description of a Peoria police officer, the prior FCE, and some of the prior opinions of the other doctors. Levin also conducted a physical examination of Hutchinson. By the time of the re-evaluation, Hutchinson had completed PT and an FCE and had been told by Dr. Johnson that he was at MMI. Hutchinson told Levin about the car accident in Iowa and about the resulting injuries and hospitalization. At the time of the re-evaluation, Hutchinson was still having pain and weakness in his left shoulder and was having problems with overhead activities. Levin found that Hutchinson was at MMI but that Hutchinson did not meet all of the requirements of a police officer and did not have the ability to return to full duty police work.

¶ 36        In June 2018, Dr. Levin conducted a second re-evaluation of Hutchinson's condition and issued a second supplemental report, presumably again as part of Hutchinson's workers'

13

compensation case. As part of his second re-evaluation, Levin reviewed some additional records that he had not reviewed previously, including the medical records from Hutchinson's car accident. Based upon the fact that Hutchinson was gaining strength before his car accident and that more PT had been recommended, Levin opined that Hutchinson could possibly benefit from additional PT to his left shoulder and work conditioning and that it was also possible that Hutchinson had not performed as well as he could have on the FCE because he was still recovering from the injuries he had sustained in the car accident. In addition to further PT and work conditioning, Levin recommended that Hutchinson have a new FCE conducted to determine if Hutchinson had attained that ability to return to full duty work as a police officer.

¶ 37    In October 2018, Dr. Boscardin conducted a re-evaluation of Hutchinson's condition at the Pension Board's request and issued a supplemental report. As part of his re-evaluation, Boscardin reviewed some additional records that he had not reviewed previously, including the prior FCE, the medical records from Hutchinson's car accident, and the prior opinions of Dr. Levin and Dr. Fletcher. Boscardin noted in his supplemental report that he had not previously been told of Hutchinson's car accident. After reviewing the new materials, Boscardin agreed with Dr. Levin and opined that Hutchinson should proceed with a short course of work hardening and have a new FCE conducted to determine whether Hutchinson was able to return to full duty work as a police officer. Boscardin also agreed with Dr. Levin that Hutchinson's performance on the FCE may have been impacted by the injuries he sustained in the car accident.

¶ 38    A few days later, Dr. Anderson conducted a re-evaluation of Hutchinson's condition at the Pension Board's request and later issued a supplemental report. As part of his re-evaluation, Anderson reviewed some additional records, including the prior FCE, the medical records from Hutchinson's car accident, and the prior opinion of Dr. Fletcher. Anderson opined in his

14

supplemental report that Hutchinson should resume PT and that it was possible that Hutchinson could return to work, although Anderson believed that it was still unlikely that Hutchinson would be able to use adequate force to apprehend suspects and protect himself and others. Anderson felt that Hutchinson's ability to perform in physically confrontational situations would likely remain limited and that as a result, Hutchinson would not be able to return to full and unrestricted police duty.

¶ 39 In November 2018, Dr. Huddleston conducted a re-evaluation of Hutchinson's condition at the Pension Board's request and issued a supplemental report. As part of his re-evaluation, Huddleston reviewed some additional records, including the prior FCE, the medical records from Hutchinson's car accident, and the prior opinions of Dr. Levin and Dr. Fletcher. Huddleston opined in his supplemental report that Hutchinson was at MMI and that Hutchinson was not disabled for police work. Huddleston found that Hutchinson was not disabled because: (1) Hutchinson had performed very well on the prior FCE (at greater than the 95% performance level), even though it was conducted only two months after his car accident, and was likely now at the 100% performance level; and (2) in Huddleston's opinion, there was no difference between operating at the 96%, versus the 100%, functional level.

¶ 40 Later that same month, Hutchinson had a follow-up visit with Dr. Johnson. During the follow-up visit, Johnson conducted a physical examination of Hutchinson. Johnson gave Hutchinson a steroid injection to see if that would reduce the pain that Hutchinson was having in his left shoulder.

¶ 41 During January and February 2019, Hutchinson participated in an additional course of PT for his left shoulder at Midwest Orthopaedic. Also in February 2019, Hutchinson had another follow-up visit with Dr. Johnson. Hutchinson reported that the steroid injection did not help his

15

left shoulder pain.  Johnson told Hutchinson that he could not return to work as a police officer, and they discussed the possibility that Hutchinson might have to get an entire left shoulder replacement done at some point in the future.

¶ 42    In April 2019, an additional FCE was conducted.  The FCE showed that Hutchinson continued to have deficiencies in lifting overhead and range of motion, that he was at MMI, and that he might need permanent restrictions for overhead lifting.  The FCE noted that while Hutchinson was able to meet the lift requirements of the job, his ability to defend himself or others in emergency situations "[was] compromised," secondary to Hutchinson's decreased range of motion and reduced strength within his left shoulder.  The FCE noted further that Hutchinson's ability to act as a first responder "could" also be compromised.

¶ 43    On that same day, Dr. Fletcher conducted a re-evaluation of Hutchinson's condition at Hutchinson's attorney's request and later issued a supplemental report.  In conducting his re-evaluation, Fletcher reviewed several additional documents, including the most recent FCE, the medical records of Hutchinson's car accident, and some of the prior opinions of the other doctors.  Fletcher also conducted a physical examination of Hutchinson.  After reviewing the relevant information and conducting his examination, Fletcher opined that Hutchinson was still disabled for service as a police officer.  Fletcher noted in his report that Hutchinson had completed another course of PT, as some of the other doctors had recommended, but Hutchinson's condition had not improved.  Fletcher commented that although Hutchinson was meeting the lift requirements of his job position, his ability to defend himself or others in emergency situations was compromised and his ability to act as a first responder "could" also be compromised.

16

¶ 44        In March 2020, after all of the evidence had been presented and Hutchinson's attorney had made his closing argument, the Pension Board announced its decision. The Pension Board found that Hutchinson was not disabled for service as a police officer and denied Hutchinson's application for a disability pension. Having so concluded, the Pension Board made no determination as to whether Hutchinson would have been entitled to a line-of-duty or a not-on-duty disability pension if he had been disabled. The Pension Board issued its written ruling several months later. In the written ruling, the Pension Board noted, among other things, that the opinions of the IME doctors were conflicting and that it found Dr. Huddleston's opinion to be the most credible of the IME doctors. The Pension Board discounted the opinions of Dr. Johnson and Dr. Fletcher because they were Hutchinson's doctors (Hutchinson's treating physician and the IME doctor that Hutchinson had retained to support his position). The Pension Board also rejected the findings of the second FCE because the Pension Board believed that the second FCE was contradictory (the FCE found that Hutchinson was performing above the required medium work level but yet concluded that his ability to defend himself and act in emergency situations "could" be compromised) and that it failed to address Hutchinson's current abilities (the FCE indicated that Hutchinson's ability to act in some instances "could" be compromised).

¶ 45        Hutchinson subsequently filed a complaint in the trial court for administrative review of the Pension Board's ruling. After full briefing and oral arguments on the matter, the trial court took the case under advisement. The trial court later issued a written decision, finding that Hutchinson was disabled for service as a police officer and that the Pension Board's ruling to the contrary was against the manifest weight of the evidence. The trial court reversed the Pension

17

Board's ruling, ordered that Hutchinson be awarded a line-of-duty disability pension, and remanded the case to the Pension Board to implement that award. The Pension Board appealed.

¶ 46                                                    II. ANALYSIS

¶ 47          On appeal, the Pension Board argues that the trial court erred in overturning the Pension Board's decision and in awarding Hutchinson a line-of-duty disability pension.[1] In support of that argument, the Pension Board makes two main contentions. First, the Pension Board asserts that under the manifest weight of the evidence standard of review, which applies to the Pension Board's ruling in this case, the Pension Board's finding of no disability must be upheld because there is some record evidence—the supplemental opinion of Dr. Huddleston—that supports the Pension Board's finding. In making that assertion, the Pension Board notes that it was the responsibility of the Pension Board, as the trier of fact, to weigh the conflicting medical evidence and to determine which evidence was the most convincing. The Pension Board maintains that the trial court, in reversing the Pension Board's decision, ignored the record evidence, impermissibly reweighed the evidence, and improperly substituted its judgment for that of the Pension Board. Second, and in the alternative, the Pension Board asserts that even if this court determines that Hutchinson was disabled, it should still reverse the trial court's award of a line-of-duty disability pension to Hutchinson because it was improper for the trial court to make such an award when the Pension Board never ruled upon that issue. Thus, for all of the reasons stated, the Pension Board asks that we affirm the Pension Board's finding of no disability, that we reverse the trial court's conclusion to the contrary, and that we also reverse the trial court's

---

[1] To avoid confusion as to why the Pension Board is the appellant in this case, we have framed the parties' arguments, at least initially, in terms of whether the trial court's ruling on administrative review was erroneous. The parties and this court are fully aware, however, that on appeal in an administrative review case, the appellate court reviews the decision of the administrative agency and not the decision of the trial court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006).

18

award of a line-of-duty disability pension to Hutchinson. In the alternative, if we find that Hutchinson was, in fact, disabled, the Pension Board asks that we reverse the trial court's award of a line-of-duty disability pension to Hutchinson and that we remand this case to the Pension Board to determine whether Hutchinson is entitled to a line-of-duty or a not-on-duty disability pension.

¶ 48          Hutchinson argues that the trial court's ruling was proper and should be upheld. In response to the Pension Board's main argument on appeal, Hutchinson asserts that the trial court properly overturned the Pension Board's finding of no disability because that finding was unsupported by the medical evidence in that: (1) the doctor whose supplemental opinion the Pension Board relied upon—Dr. Huddleston—had not been given all of the evidence (Huddleston was not told that Hutchinson had subsequently completed a new FCE and another round of PT but was still not at the 100% performance level); (2) the medical evidence on whether Hutchinson was disabled was not conflicting, contrary to the Pension Board's claim on appeal; and (3) disability is a question of whether the applicant can perform the whole job and is not a question of what percentage of the job the applicant can perform, as Dr. Huddleston seemed to believe. Thus, Hutchinson contends that the Pension Board's finding of no disability was against the manifest weight of the evidence and was correctly reversed by the trial court, which gave proper deference to the Pension Board's decision but ultimately overturned that decision. As for the Pension Board's argument in the alternative, Hutchinson asserts that the trial court properly found as a matter of law—based upon the Pension Board's factual findings as to how Hutchinson's injury and alleged disability occurred—that Hutchinson was injured in the line of duty and that Hutchinson was entitled to a line-of-duty disability pension. In making that assertion, Hutchinson maintains that the facts as to how Hutchinson was injured and the cause of

19

Hutchinson's disability are not in dispute. For all of the reasons set forth, Hutchinson asks, therefore, that we reverse the Pension Board's finding of no disability, that we affirm the trial court's conclusion to the contrary, and that we affirm the trial court's award of a line-of-duty disability pension to Hutchinson.

¶ 49    In cases involving administrative review, the appellate court reviews the decision of the administrative agency, not the determination of the trial court. *Id.* Judicial review of a decision of a pension board, such as the one in the present case, is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2020)) and extends to all questions of fact and law presented by the entire record. See 40 ILCS 5/3-148 (West 2020); 735 ILCS 5/3-110 (West 2020); *Marconi*, 225 Ill. 2d at 531-32. The standard of review that applies on appeal is determined by whether the question presented is one of fact, one of law, or a mixed question of fact and law. *Marconi*, 225 Ill. 2d at 532. As to questions of fact, the agency's decision will not be reversed on appeal unless it is against the manifest weight of the evidence. *Id.* Questions of law, however, are subject to *de novo* review, and mixed questions of fact and law are reviewed under the clearly erroneous standard. *Id.* Regardless of which standard of review applies, the plaintiff in an administrative proceeding bears the burden of proof and will be denied relief if he or she fails to sustain that burden. *Id.* at 532-33.

¶ 50    A pension board's determination of whether a person is disabled for service as a police officer is a question of fact. See *id.* at 534. Therefore, we will not reverse the Pension Board's ruling on disability in this case unless it is against the manifest weight of the evidence. See *id.* For a reversal to be warranted under the manifest weight of the evidence standard, it must be clearly evident from the record that the administrative agency should have reached the opposite conclusion. *Id.* That the opposite conclusion is reasonable or that the reviewing court might

20

have ruled differently if it was the trier of fact is not enough to justify a reversal. *Id.* If the record contains evidence to support the agency's decision, the agency's decision should be affirmed. *Id.* Furthermore, when examining an administrative agency's factual findings, a reviewing court will not re-weigh the evidence presented in the administrative proceeding or substitute its judgment for that of the administrative agency. *Id.*

¶ 51 Turning to the merits, we note that the provisions governing the pensions of police officers must be liberally construed in favor of the applicant. See *Robbins v. Board of Trustees of Carbondale Police Pension Fund*, 177 Ill. 2d 533, 545 (1997) (recognizing that courts liberally construe pension laws in favor of those to be benefitted). In the size of municipality involved in the present case, a municipal police officer may obtain a disability pension if he or she is found to be physically or mentally disabled for service in the police department so as to render necessary his or her suspension or retirement from the police service. See 40 ILCS 5/3-114.1, 3-114.2 (West 2016); *Marconi*, 225 Ill. 2d at 535. The Pension Code defines "disability" for a police officer as "[a] condition of physical or mental incapacity to perform any assigned duty or duties in the police service." 40 ILCS 5/5-115 (West 2016); *Hampton v. Board of Trustees of Bolingbrook Police Pension Fund*, 2021 IL App (3d) 190416, ¶ 18 (applying the definition of police officer "disability" contained in the article of the Pension Code that pertained to municipalities with more than 500,000 inhabitants, even though the municipality involved in that case had less than 500,000 inhabitants, because the Pension Code article for smaller-sized municipalities did not contain a definition of police officer "disability"). If a municipal police officer's disability was caused by "sickness, accident or injury incurred in or resulting from the performance of an act of duty," he or she may obtain a line-of-duty disability pension. See 40 ILCS 5/3-114.1 (West 2016); *Marconi*, 225 Ill. 2d at 535. In the alternative, if a municipal

21

police officer's disability was the result of any cause other than the performance of an act of duty, the officer is entitled to receive a not-on-duty disability pension. See 40 ILCS 5/3-114.2 (West 2016); *Marconi*, 225 Ill. 2d at 535. The determination of whether a police officer has suffered a line-of-duty injury is a fact specific inquiry. *Hampton*, 2021 IL App (3d) 190416, ¶ 27. To obtain line-of-duty benefits, a police officer need not prove that his duty related activities were the sole or primary cause of the disability, but rather, must only prove that his duty related activities were a contributing or exacerbating factor. See *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 505 (2007).

¶ 52　　　In the present case, after reviewing the evidence presented at the Pension Board hearing and applying the legal principles set forth above, we conclude that the Pension Board's finding— that Hutchinson was not disabled for service as a police officer—was against the manifest weight of the evidence. See *Marconi*, 225 Ill. 2d at 534. The Pension Board based its finding of no disability primarily upon the supplemental opinion/report of Dr. Huddleston, the only doctor in this case who opined that Hutchinson was not disabled. Huddleston believed that with the passage of time from when Hutchinson's car accident occurred and the performance of some additional PT, Hutchinson would be able to perform at the 100% level on a new FCE and was, therefore, not disabled for service as a police officer. Huddleston, however, was never provided with the later information—that Hutchinson had completed another course of PT and a new FCE but was still unable to perform at the 100% level—and was never asked to give a second supplemental opinion/report after considering that new information.

¶ 53　　　The Pension Board, on the other hand, was fully aware of the new information and would have known that the new information proved, without question, that Huddleston's belief or opinion was incorrect. Thus, the Pension Board could not rely on the opinion in Huddleston's

22

supplemental report to conclude that Hutchinson was not disabled. See *Wade*, 226 Ill. 2d at 507 (finding that a pension board's disability decision was against the manifest weight of the evidence where the pension board relied upon and gave greater weight to the opinion of a doctor who had failed to consider or to base his opinion on relevant material evidence that was key under the circumstances of the case); *Hampton*, 2021 IL App (3d) 190416, ¶ 21 (finding that a pension board's disability decision was against the manifest weight of the evidence where the pension board, among other things, gave greater weight to the opinion of a doctor whose conclusions were inconsistent with the available facts).

¶ 54    The remaining evidence before the Pension Board, when viewed in light of the most recent information, allowed for only one conclusion—that Hutchinson was disabled for service as a police officer. We make that determination here for four reasons. First, all of the doctors who rendered an opinion on the matter, other than Dr. Huddleston in his supplemental opinion, generally found that Hutchinson was disabled for service as a police officer or that Hutchinson could not return to police work. All three of the Pension Board doctors, Dr. Huddleston, Dr. Anderson, and Dr. Boscardin, initially opined that Hutchinson was disabled. Although Huddleston later changed his opinion and found that Hutchinson was not disabled, the other two Pension Board doctors never did so outright and merely indicated that there was a possibility that Hutchinson's condition could improve with the passage of time after the car accident and the completion of some additional PT and that a new FCE was necessary to determine if Hutchinson could return to full police duty. As with Huddleston, any belief or opinion that the other two doctors held in that regard was completely refuted by the more recent evidence, of which the Pension Board was aware, that Hutchinson had completed another course of PT and a new FCE but was still not able to return to full and unrestricted police duty. In addition to the Pension

23

Board doctors, the workers' compensation doctor, Dr. Levin, also opined in his first supplemental report that Hutchinson was at MMI but was unable to return to work as a police officer. In his second supplemental report, Levin never changed his opinion in that regard or reached the opposite conclusion—he merely suggested that Hutchinson could possibly improve with the passage of time after the car accident and the completion of some additional PT and that a new FCE was needed to determine if Hutchinson could return to full police duty. Hutchinson's own doctors reached essentially the same conclusion as the other doctors. Hutchinson's treating doctor, Dr. Johnson, noted in his reports that Hutchinson's performance was limited or restricted and that Hutchinson could not return to work as a police officer, and Hutchinson's IME doctor, Dr. Fletcher, found that Hutchinson was disabled for service as a police officer and would not be able to return to police work.

¶ 55    Second, consistent with all of the doctors' opinions (except for Huddleston's second supplemental opinion as noted above), the two FCEs concluded that Hutchinson's use of his left arm/shoulder was limited and that he was not able to complete some of the duties of a Peoria police officer. Rather than accept the findings of the second FCE, the Pension Board treated the second FCE's use of the word, "could," as an indication that the second FCE had failed to ascertain Hutchinson's current abilities. While we disagree with the Pension Board's assessment in that regard, we note that it was also factually incorrect in that the second FCE stated that Hutchinson's ability to defend himself and others "[was] compromised" due to the problems with his left shoulder and that his ability to act as a first responder "could" be compromised as well.

¶ 56    Third, the evidence established that Hutchinson was placed on permanent restrictions and that the City did not offer Hutchinson a permanent light duty position that would accommodate

24

those restrictions and would allow Hutchinson to continue to work for the City as a police officer.

¶ 57 Fourth and finally, although Huddleston also indicated in his supplemental report that Hutchinson's ability to perform at approximately the 96% performance level was equivalent to full performance of the job duties, there was no support for that conclusion in the law or in any of the evidence presented to the Pension Board, especially since the FCEs in this case indicated that Hutchinson's ability to perform certain police-officer responsibilities was compromised.

¶ 58 Other than Huddleston's supplemental opinion, which was completely refuted by the more recent information as indicated above, there was simply no evidence before the Pension Board from which it could find that Hutchinson was not disabled. Contrary to the Pension Board's assertion on appeal, this is not a case where the credible medical evidence was conflicting. It was merely a situation where some of the doctors (Levin, Huddleston, Anderson, and Boscardin) were not subsequently provided with the most recent information and asked to prepare another supplemental report after considering that information. In addition, none of the doctors in this case testified before the Pension Board. Thus, factors, such as the demeanor of the testifying medical experts, does not figure into the assessment of credibility here. See *Wade*, 226 Ill. 2d at 507 (making a similar comment as to the facts of that case). Therefore, based upon the evidence presented to the Pension Board in this case, we must conclude that the Pension Board's finding of no disability was against the manifest weight of the evidence. See *Marconi*, 225 Ill. 2d at 534; *Wade*, 226 Ill. 2d at 507; *Hampton*, 2021 IL App (3d) 190416, ¶ 21.

¶ 59 Having reached that conclusion, we also find that it was proper, under the particular facts of the present case, for the trial court to go a step further in its ruling and to determine as a matter of law that Hutchinson was entitled to a line-of-duty disability pension. The Pension Board in

this case made specific factual findings that Hutchinson was injured while he was on duty and was trying to gain control over a suspect who was resisting a pat-down search. In addition, all of the doctors (Levin, Huddleston, Anderson, Boscardin, and Fletcher) who rendered opinions on the causation of Hutchinson's disability found that the March 2017 work incident had caused Hutchinson's disability, either directly or by aggravating the preexisting condition of Hutchinson's left shoulder.[2] Based upon the record evidence in this case, we conclude, therefore, that as a matter of law, Hutchinson was entitled to a line-of-duty disability pension. See *Hampton*, 2021 IL App (3d) 190416, ¶ 28 (upholding the trial court's grant of a line of duty disability pension to the applicant, even though the pension board had never ruled upon that issue).

¶ 60                                 III. CONCLUSION

¶ 61        For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County and reverse the decision of the Pension Board.

¶ 62        Circuit court affirmed; Pension Board reversed.

---

[2] It is unclear from the record whether Hutchinson's treating doctor, Dr. Johnson, ever opined as to the causation of Hutchinson's disability.